THE COMMONWEALTH *v.* CHURCH.

IN ERROR.

Barr.
1 105
126 204
1 105
23 SC 106

In a criminal case, an opinion of the court filed by request according to the provisions of the statute, is not a part of the record for revision on a writ of error.

It is error to quash an indictment for matter which is not apparent in the body of it or in the caption, extrinsic matter being proper for defence only on trial by a jury.

An erection in a river, which is a highway, is primâ facie indictable, according to the course of the common law; and where it is licensed by the statute of 1803, it is the business of the defendant to bring his case within it as an exception.

The statute, however, licenses no erection but such as is subservient to the use of water-power; *Held*, therefore, that a dam erected in the Swatara river to make a pool for rafts of timber brought to a steam saw-mill on the shore, is indictable as any other nuisance.

THE defendant was indicted in the Quarter Sessions of Dauphin county, " for that he did erect and build, set up, repair and maintain, a certain dam of the length of one hundred feet, of the breadth of twelve feet, and of the height of six feet, in the river Swatara, in the township of Lower Swatara, in the county aforesaid, and in that part of said river declared by an act of Assembly of the Commonwealth of Pennsylvania, a public stream and common highway within and across part of the said river Swatara, within the township of Lower Swatara, and county aforesaid, by means of which the navigation and free passage of, in, through, along, and upon said river Swatara, is greatly obstructed, and the said dam, so as aforesaid erected, built, and set up, did repair, maintain, and continue, from the said first day of January, in the year aforesaid, until the day of the taking of this inquisition, with force and arms, at the township and county aforesaid, and the said dam does still keep up, maintain, and continue, to the great damage and common nuisance, obstruction, and impediment of all the good citizens of this commonwealth, passing and navigating on and through the said public stream and highway, with their arks, craft-boats, and vessels, about their necessary business, with their goods and chattels, and merchandise, contrary to the act of Assembly, in such case made and provided, to the evil example of all others in like case offending, and against the peace and dignity of the Commonwealth of Pennsylvania."

On motion, the court below, after argument, quashed the indictment; and Eldred, president, delivered and filed the following opinion at the instance of the counsel for the Commonwealth, who, thereupon, removed the record, by writ of error, to this court.

" The defendant is indicted for a nuisance. The indictment charges

him with erecting a dam in the Swatara creek, and in that part thereof declared by law to be a public highway, and keeping the same in repair, &c., by means whereof the navigation is obstructed, &c.

" The defendant's counsel asks the court to quash this indictment, as the proceedings are not according to the act of the 23d March, 1803, relating to mill-dams.

" By the first section of this act, persons are authorized to erect a dam or dams, for a mill or mills, or other water-works, upon any navigable stream of water, declared by law a public highway, and to keep the same in good repair, provided, that in erecting the said dam, and keeping the same in repair, the navigation shall not be impeded or obstructed, &c.

" The second section points out a specific mode of proceeding in the Criminal Court, against a person who shall obstruct the navigation. Commissioners are to be appointed by the Court of Quarter Sessions, to view the dam and compare it with the provisions of this act, and to report to the next Court of Quarter Sessions the state thereof; and if it shall appear to the court that an offence has been committed against this act, the court shall direct a bill of indictment to be sent to the grand jury. And in case of a conviction, after prescribing the fine, and the manner of applying it, this section further provides, that the court shall direct the supervisors of the township, forthwith to remove such artificial obstruction, so as to bring the same within the provisions of this act.

" The third section provides a civil remedy for a party who may be injured. This act has been regarded as remedial. It creates no new offence, but it particularly alters the penalties and the mode of enforcing them, and of itself forms a complete system of proceedings against any persons who violate its provisions ; and, taken together, is inconsistent with the common-law proceedings, or with any other statutory regulation. The courts have, on several occasions, decreed that this act must be followed in all cases within its provisions. For the Commonwealth it is contended, that the dam here complained of is not within the provisions of this act, and this they desire to prove by witnesses, and have the question left as a question of fact for the jury. I am of the opinion, that from an inspection of the indictment, it appears upon its face to be one charging the defendant with an offence that would fall within the provisions of this act; and as its provisions have not been complied with, it falls within the case of the Commonwealth v. Brown, 3 Serg. & Rawle, 275, and the indictment must be quashed.

" In the argument it has been alleged, that the defendant's mill-dam is not within the provisions, nor such as is contemplated by the act

relating to mill-dams; it being a steam saw-mill, and uses none of the water formed in this pool for the purpose of propelling the mill. It would seem by the argument of the counsel, as if the dam complained of was erected for the purpose of holding and securing the timber procured for the purpose of sawing in the steam saw-mill belonging to the defendant. Were it even so, I am by no means prepared to say, that the mischief is not within the remedy provided for by this act. The words of the first section are, that persons, &c., *are hereby authorized to erect a dam or dams for a mill or mills or other water-works.* The object of this law is well understood to be, to enable our navigable streams to be used for mills and other water-works, whenever it could be done without any injury either to the public or individuals. It being remedial in its nature, it would be a strict construction that would confine it to the erection of a dam to a mill or other water-works, that were driven by water taken from the pool of such dam. The language of the law is broad enough to cover a dam used for a steam saw-mill, as this is alleged to be. To this steam saw-mill a pool to hold the logs that are used for sawing, is nearly as important as water-power would be to mills propelled by it. How this may be, I do not pretend to know, but certain it is, that there are many valuable steam saw-mills that now use a dam to form a pool to keep their logs safe from floods and other accidents, and for the convenience of the mill, which would be entirely useless without such dam and pool. Logs are purchased during the floods in the stream ; they cannot be procured at any other time ; they are periodical, and by the flood the logs are floated down to the mill, or near it, when they are generally placed in a pool formed by a dam, to be used as needed for sawing up. To require the owners of such mills to draw out the logs and lay them on the bank of the stream, and then to keep a year or six months' stock, would be an expense that in all probability could not be borne, aside from the injury the timber would sustain by being thus exposed to the air. Many of our public streams are such, that water-power cannot be created with the aid of dams without completely destroying the navigation. This may be so for fifty or one hundred miles. The public have great necessity for mills, should they be even *steam saw-mills*, and to be at all useful they must be located on some stream on which they may be able to purchase their stock of logs as they come down with the flood. *A dam* creating a pool for the purpose of retaining those logs being necessary for the beneficial use of the mill, would be within the provisions of this law now under consideration. It would be a dam for *a mill or other water-works.*

" This opinion is filed at the instance of the counsel for the Common-

wealth, and with a view that it should be reviewed by the Supreme Court, the question being considered an important one."

The following errors were assigned:

1. The court erred in quashing the indictment, instead of proceeding with the trial of the cause.

2. In the opinion, that the act of the 23d of March, 1803, authorizes the erection of dams in navigable streams declared public highways, for steam saw-mills, or other mills than those propelled by water, and for the mere purpose of forming a pool to retain logs.

*Rawn*, for the Commonwealth.

The court assumed, that the indictment in this case was for the erection of a dam for such purposes as is authorized by the first section of the act of the 23d of March, 1803, relating to mill-dams in streams declared public highways; although it was admitted, that it was merely for the purpose of creating a pool to hold the logs to be sawed at the steam saw-mill of the defendant on the shore.

He contended that the act only authorizes dams for a mill or mills, or other water-works, to lead off thereby *so much of the water of such stream as may be necessary for his or their mill or mills or other water-works.* The second section of the act requires the appointment of commissioners only in case of the erecton of *such a dam,* for the purposes stated. It did not appear on the face of the indictment, that defendant's erection was such a dam. The court, therefore, had no ground upon which to quash the indictment, without assuming that which did not appear, and against what was expressly admitted. This they had no right or power to do, particularly after a plea of the general issue and jury sworn.

The defendant should have pleaded it specially, if he pretended that his case was within the provisions of the act, or he should have required the court to direct the jury to find a special verdict, stating the facts. If his special plea were admitted and demurred to, or the jury found upon it in his favour, the court would have quashed in the first instance, or arrested the judgment in the latter. He cited Commonwealth *v.* Searle, 2 Binn. 332, and Commonwealth *v.* White, 6 Binn. 182, on the conclusion of indictments; 1 Chitty's Crim. Law, 247, 249, and 4 Yeates' Rep. 69, on the subject of quashing indictments. He also cited Commonwealth *v.* Brown, 3 Serg. and Rawle, 276, and Kelly *v.* The Commonwealth, to show that obstructing highways was an offence at common law, and not extinguished by the act of 6th of April, 1802.

*McCormick*, for defendant in error.

An indictment at common law will not lie for erecting a dam in a

stream declared a public highway; but the remedy provided by the act of 1803 must be pursued. Brown *v.* Commonwealth, 3 Serg. and Rawle, 273. Where a civil injury is sustained from such a dam, the same remedy must be pursued. Oliphant *v.* Smith, 3 Penna. Rep. 180; Criswell *v.* Clugh, 3 Watts, 330. Where a remedy is provided by an act of Assembly, the direction of the act should be strictly pursued; and nothing done according to the provisions of the common law, act of 21st of March, 1806, Purdon's Digest, 56. The Swatara river declared a public highway by act of 9th of March, 1771, 1 Smith's Laws, 324. The act of 1803 is a beneficial one, and ought to be liberally construed; it is, therefore, a protection for a dam erected for a steam-mill, and the rule ought to be to preserve every dam within the act until a new one has been had under its provisions.

*Fisher*, in reply.

The opinion of the court was delivered by GIBSON, C. J.

In this instance, we have strictly no more before us than an indictment of nuisance for erecting a dam in the Swatara river, and the order by which it was quashed. Now, the erection of a dam in a stream which is a highway, is primâ facie indictable simply as a nuisance, not in subordination to the act of 1803, but according to the course of the common law; and if the defendant will protect himself on the ground that his case is an exception, he must show it. The court then, it seems, quashed this indictment for something extraneous, and not for any thing appearing in the caption, or on the face of it; but of extraneous matter as ground of adjudication, we are not permitted to take cognisance. The indictment is unexceptionable in form; and we are, of course, bound to say the order to quash it is erroneous. This necessary consequence illustrates the rule stated by Mr. Chitty and other writers on criminal law, that, though the court has discretionary power over the subject, the exercise of it is to be guided by rules; and that an indictment is to be quashed only for some defect apparent in it, or in the caption of it; for instance, want of jurisdiction. But that it is not to be quashed for extrinsic facts, is evident from the results that would be produced by a contrary doctrine in taking the case from the jury. Now, we understand from the opinion filed, which, however, is no part of the record in a criminal case or a subject of error, that the court proceeded on proof, or an assumption of the fact, that the erection complained of is within the purview of the act of 1803; and indictable, if at all, only in the course which that statute prescribes. But where the nature, character, circumstances, and use, of the erection is not set forth in the indict-

. K

ment, who is to determine whether it is within the purview of that statute or not? Certainly not the court, proceeding on depositions in the first instance, and prejudging the merits of what is strictly matter of defence. Now, whether this dam was licensed by the act of 1803, or subject to its regulations, depended on facts which none but a jury could determine, and which, if they should doubt of the law resulting from them, it would be their duty specially to find. That is not all. If this dam is what it was assumed to be, it is clearly not within the purview or the protection of the statute at all; and as the counsel have intimated a wish to have our opinion on that point, it is proper to give it. It was the purpose of the legislature to preserve to the owners of the shore, not the water, but the water-power, for driving machinery, so far as it could be done in due consistence with the public right of navigation and fishery; not to give a pool as a harbour for rafts, any more, as was said in the argument, than to give a pool for the washing of sheep. The words of the statute, in their ordinary and proper sense, limit the use of the privileges to the creation of water-power. "All, and every person or persons, owning land adjoining any navigable river declared a public highway," it is said, "are hereby authorized to erect a dam or dams, for a mill or mills, or *other water-works* upon every such stream of water, adjoining their own land; and to keep the same in good repair, and also to *lead off* thereby, so much of the water of said stream as may be necessary for his or their mill or mills, or other water-works:" thus indicating, throughout, no more than an intention to preserve, for actual use, the water-power of the public rivers, then as now, thought to be of great general importance. And why should it have been otherwise? In America, steam was little known and less used as a motive-power; and even had it been as well understood as it is now, it would have been known that it needs no such appliances as are claimed for it in the case before us. As water enough to generate steam may be had anywhere, a steam saw-mill may be far inland; and an owner of one might as reasonably claim a pool for his rafts where his mill is many miles distant from the shore as where it is hard by. But the legislature never consented to part with a particle of the public franchise for purposes of merely private convenience. The riparian owner was left to provide a pool for himself, if he should see proper, by scooping a basin out of his own soil. He was allowed to erect a dam in order to avail himself of the fall in the stream between the point at which it should touch his part of the shore, and the point at which it should leave it; but for nothing else. On every ground, then, the order to quash is erroneous.

Order reversed, and record remitted.