347 A.2d 290
COMMONWEALTH of Pennsylvania, Appellant,

v.

Charles MacDONALD, et al.
COMMONWEALTH of Pennsylvania, Appellant,

v.

Charles MacDONALD.

Supreme Court of Pennsylvania.

Argued May 5, 1975.
Decided Oct. 30, 1975.

436

438

Donald L. Reihart, Dist. Atty., York, for appellant.

Harold N. Fitzkee, Jr., Donn I. Cohen, York, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

## OPINION

ROBERTS, Justice.

These appeals arise out of a two-pronged effort by the Commonwealth to prevent the showing of certain allegedly obscene motion pictures. The Commonwealth first filed a criminal complaint against Charles MacDonald, Raetta Thompson, and Lance Wolf alleging that they had violated sections 5903 [1] and 6504 [2] of the Crimes Code by

1. 18 Pa.C.S. § 5903 (1974). The pertinent portions of this section provide:

"(a) Offenses defined.—Whoever sells, lends, distributes, exhibits, gives away or shows to any person 17 years of age or older or offers to sell, lend, distribute, exhibit or give away or show, or has in his possession with intent to sell, lend, distribute or give away or to show to any person 17 years of age or older, or knowingly advertises in any manner any obscene literature, book, magazine, pamphlet, newspaper, storypaper, paper, comic book, writing, drawing, photograph, figure or image, or any written or printed matter of an obscene nature, or any article or instrument of an obscene nature, or whoever designs, copies, draws, photographs, prints, utters, publishes or in any manner manufactures or prepares any such book, picture, drawing, magazine, pamphlet, newspaper, storypaper, paper, comic book, writing, figure, image, matter, article or thing or whoever writes, prints, publishes or utters or causes to be printed, published or uttered, any advertisement or notice of any kind giving information, directly or indirectly, stating or purporting to state where, how, or whom, or by what means any obscene book, picture, writing, paper, comic book, figure, image, matter, article or thing named in this section can be purchased, obtained or had, or whoever hires, employs, uses or permits any minor or child to do or assist in doing any act or thing mentioned in this section, is guilty of a misdemeanor of the second degree.

"(b) Obscene defined.—'Obscene,' as used in this section, means that which, to the average person applying contemporary community standards, has as its dominant theme, taken as a whole, an appeal to prurient interest."

2. 18 Pa.C.S. § 6504(1974). This section provides:

"Whoever erects, sets up, establishes, maintains, keeps or continues, or causes to be erected, set up, established, maintained, kept or continued, any public or common nuisance is guilty of a misdemeanor of the second degree.

"Where the nuisance is in existence at the time of the conviction and sentence, the court, in its discretion, may direct ei-

exhibiting the motion pictures "Deep Throat" and "The Devil in Miss Jones." Subsequently, the Commonwealth filed a complaint in equity against MacDonald only seeking to enjoin exhibition of those motion pictures in the future. Appellees filed a petition to quash the criminal complaint and preliminary objections to the complaint in equity. The court of common pleas quashed the criminal complaint on the ground that the statutes in question violated the First Amendment to the United States Constitution as interpreted by *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). It also sustained the preliminary objections to the complaint in equity on the ground that the invalidity of the obscenity statute left no "legal basis upon which the films in question can be determined to be obscene." These appeals followed [3] and we consolidated them for oral argument. We now affirm.

The criminal charges under sections 5903 and 6504 will be discussed in parts I and II of this opinion, respectively. The action in equity will be considered in part III.

## I

The charges of violation of section 5903, appearing in count one of the criminal complaint, read as follows:

"Defendant[s] did exhibit and show to persons over 17 years of age, obscene photographs and images that were cast upon a motion picture screen. The photographs and images depicted acts of oral and anal sodomy and sexual intercourse, and pictured the genitals of males and females in a state of excitement. The

ther the defendant or the sheriff of the county at the expense of the defendant to abate the same."

**3.** Our jurisdiction over the criminal proceeding is founded upon the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, § 202(9), 17 P.S. § 211.202(9). (Supp.1974). Our jurisdiction over the equity proceeding is founded upon Id. § 202(4), 17 P.S. § 211.202(4).

photographs and images were contained in a motion picture film, which when taken as a whole was obscene."

Appellees moved to quash the indictment on the ground that it failed to charge a crime, because (1) the statute does not prohibit the exhibition of an obscene motion picture and (2) the statute was unconstitutionally vague and therefore invalid. The court of common pleas rejected the first contention but agreed with the second and quashed count one of the complaint. We agree that section 5903 does attempt to prohibit exhibition of obscene motion pictures but that it is unconstitutional insofar as it prohibits distribution or exhibition of obscene materials to persons over the age of 17.[4]

Section 5903(a) forbids "any person" to exhibit or . . . show . . .

"any obscene literature, book, magazine, pamphlet, newspaper, storypaper, paper, comic book, writing, drawing, photograph, figure or image, or any written or printed matter of an obscene nature, or any article or instrument of an obscene nature . . .."

Surely a motion picture is simply a series of "photographs" or "images." Nevertheless appellees argue that the omission from the list of prohibited materials of any specific references to "motion pictures" indicates a legislative intent to omit them from the scope of the prohibition.

The only factor which even lends surface plausibility to appellees' proposed construction is the fact that other portions of section 5903 do specifically mention motion pictures.[5] From this appellees argue that omission of

4. The portions of § 5903 prohibiting distribution of exhibition of obscene materials to persons under the age of 17 are not in issue here.

5. Section 5903(c)(1) prohibits distribution to minors of
"any picture, photograph, drawing, sculpture, *motion picture film,* or similar visual representation or image of a person or

any such specific reference from section 5903(a) must have been intentional. We cannot agree.

Whatever might be the case if the entire statute were drafted at one time, we believe that the history of this section precludes the inference which appellees seek to draw. Section 5903(a) of the Crimes Code was derived, without any pertinent changes, from section 524 of the Penal Code.[6] Thus it is presumed that the General Assembly intended to retain the prior law except as it was explicitly altered.[7] See Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1961, 1962 (Supp.1975). There is no indication that motion pictures were excluded from the scope of section 524, which is clearly intended as a comprehensive prohibition on the distribution and exhibition of all types of obscene materials. Nor, we think, can the addition of new and extremely detailed provisions governing the exhibition and distribution of obscene materials to minors be construed to restrict the scope of the prohibition of or distribution of similar materials to adults.

Appellee would have us construe the statute to avoid the constitutional question. While there is some value to construing statutes narrowly simply to avoid or postpone constitutional adjudication, we do not believe that this

portion of the human body which depicts nudity, sexual conduct, or sadomasochistic abuse and which is harmful to minors . . . ." (emphasis added)
Section 5903 prohibits the admission of minors to any
"motion picture show or other presentation which, in whole or in part, depicts nudity, sexual conduct, or sadomasochistic abuse and which is harmful to minors . . . ." (emphasis added)

6. Act of June 24, 1939, P.L. 872, § 524, as amended by Act of October 20, 1939, P.L. 1330, § 1 (formerly codified as 18 P.S. § 4524 (1963)), repealed by Act of December 6, 1972, P.L. 1605, No. 334, § 5.

7. The primary difference between section 524 of the Penal Code and the pertinent portion of section 5903 is the restriction of section 5903(a) to obscene materials furnished to persons over the age of 17. This reflected the adoption in section 5903(c), (d) and (e), of a new comprehensive scheme of regulation covering materials furnished to minors.

factor is sufficient to justify disregard of the more probable intent of the General Assembly when that intent is expressed as plainly as it is in this case. Consequently, we conclude that motion pictures are "photographs" or "images" within the meaning of section 5903(a).

Our analysis of the validity of the statute before us must begin with the United States Supreme Court's decision in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). In *Miller* the Court ended a long period of uncertainty regarding the constitutional limits of governmental power to regulate obscene materials and laid down a five-part standard for the validity of such regulation:

> "We acknowledge . . . the inherent dangers of undertaking to regulate any form of expression. State statutes designed to regulate obscene materials must be carefully limited. As a result, we now confine the permissible scope of such regulation [1] to works which depict or describe sexual conduct. [2] That conduct must be specifically defined by state law as written or authoritatively construed. [3] A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, [4] which portray sexual conduct in a patently offensive way, and [5] which, taken as a whole, do not have serious literary, artistic, political, or scientific value."

Id. at 24–25, 93 S.Ct. 2614–15 (citation and footnote omitted).

Examining the pertinent portion of section 5903 on its face,[8] we find that it fails to satisfy the *Miller* standard. Section 5903(a) is a wide-ranging prohibition on the distribution or exhibition of obscene materials with the following definition of "obscene" appearing in section 5903(b):

> " 'Obscene,' as used in this section, means that which, to the average person applying contemporary

8. See note 1 supra.

community standards, has as its dominant theme, taken as a whole, an appeal to prurient interest."

On its face this appears to satisfy only what we have labeled as the third element of the *Miller* standard. However, the *Miller* standard may be satisfied if the statute, as authoritatively construed, complies with all of the requirements of *Miller*.[9] We therefore turn to past constructions.

We have not previously construed this precise statutory provision because it is part of the recently enacted Crimes Code. However, the portion before us in this case is identical to a prior statute [10] which we construed in *Commonwealth v. LaLonde*, 447 Pa. 364, 368 n. 4, 288 A.2d 782, 784 n. 4 (1972), to incorporate all of the requirements of the then-understood requirements of the First Amendment:

"[T]hree elements must coalesce: it must be established that

(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex;

(b) the material is patently offensive because it affronts contemporary community standards relating to the description of sexual matters; and

(c) the material is utterly without redeeming social value."

This construction satisfies four of the *Miller* requirements. Element (a) corresponds to requirement [3] of the *Miller* standard. Element (b) insures that requirements [1] and [4] are met. Finally, it is clear that if material is "utterly without redeeming social value," it must certainly lack "serious literary, artistic, political, or

9.  413 U.S. at 24, 93 S.Ct. at 2615.

10.  Act of June 24, 1939, P.L.° 872, § 524, as amended (formerly codified as 18 P.S. § 4524 (1963)), repealed by Act of December 6, 1972, P.L. 1605, No. 334, § 5.

scientific value," so that requirement [5] of the *Miller* standard is met.

However, as the Commonwealth concedes, nothing in our prior construction of the statutory language satisfies the remaining requirement of the *Miller* standard: "That conduct [whose depiction or description is forbidden] must be specifically defined by state law . . . ." 413 U.S. at 25, 93 S.Ct. at 2615. Compare 18 Pa.C.S. § 5903(c)–(e).[11] Thus, the way is not open for us to fol-

---

11. Those subsections provide as follows:

"(c) Minors.—It shall be unlawful for any person knowingly to sell or loan for monetary or other valuable consideration to a minor:

(1) any picture, photograph, drawing, sculpture, motion picture film, or similar visual representation or image of a person or portion of the human body which depicts nudity, sexual conduct, or sadomasochistic abuse and which is harmful to minors; or

(2) any book, pamphlet, magazine, printed matter however reproduced, or sound recording which contains any matter enumerated in clause (1) hereof, or explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct, or sadomasochistic abuse and which, taken as a whole, is harmful to minors.

"(d) Admitting minor to show.—It shall be unlawful for any person knowingly to exhibit for monetary consideration to a minor or knowingly to sell to a minor an admission ticket or pass or knowingly to admit a minor for a monetary consideration to premises whereon there is exhibited, a motion picture show or other presentation which, in whole or in part, depicts nudity, sexual conduct, or sadomasochistic abuse and which is harmful to minors, except that the foregoing shall not apply to any minor accompanied by his parent.

"(e) Definitions.—As used in subsections (c) and (d) of this section:

(1) 'Minor' means any person under the age of 17 years.

(2) 'Nudity' means the showing of human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state.

(3) 'Sexual conduct' means acts of masturbation, homosexuality, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if such person be a female, breast.

low those jurisdictions which have concluded that their statutes, as construed prior to *Miller*, satisfy the standard there delineated.[12]

(4) 'Sexual excitement' means the condition of human male or female genitals when in a state of sexual stimulation or arousal.

(5) 'Sadomasochistic abuse' means flagellation or torture by or upon a person clad in undergarments, a mask or bizarre costume, or the condition of being fettered, bound or otherwise physically restrained on the part of one so clothed.

(6) 'Harmful to minors' means that quality of any description or representation, in whatever form, of nudity, sexual excitement, or sadomasochistic abuse, when it:

(i) predominantly appeals to the prurient, shameful, or morbid interests of minors; and

(ii) is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors; and

(iii) is utterly without redeeming social importance for minors.

(7) 'Knowingly' means having general knowledge of, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry of both:

(i) the character and content of any material described herein which is reasonably susceptible of examination by the defendant; and

(ii) the age of the minor: Provided, however, That an honest mistake shall constitute an excuse from liability hereunder if the defendant made a reasonable bona fide attempt to ascertain the true age of such minor."

12. *People v. Enskat*, 33 Cal.App.3d 900, 109 Cal.Rptr. 433 (2d Dist.1973), cert. denied, 418 U.S. 937, 94 S.Ct. 3225, 41 L.Ed.2d 1172 (1974); *People v. Nissinoff*, 43 Cal.App.3d 1025, 118 Cal. Rptr. 457 (1st Dist.1974); *Slaton v. Paris Adult Theatre I*, 231 Ga. 312, 201 S.E.2d 456 (1973), cert. denied, 418 U.S. 939, 94 S.Ct. 3227, 41 L.Ed.2d 1173 (1974); *Hall v. Commonwealth*, 505 S.W.2d 166 (Ky.1974); *State ex rel. Wampler v. Bird*, 499 S.W.2d 780 (Mo.1973); *State v. Little Art. Corp.*, 191 Neb. 448, 215 N.W.2d 853 (1974); *State v. Harding*, N.H., 320 A.2d 646 (1974) (semble) (may have modified construction sub silentio); *People v. Heller*, 33 N.Y.2d 314, 352 N.Y.S.2d 601, 307 N.E.2d 805 (1973) (semble) (same); *State ex rel. Keating v. A Motion Picture Film Entitled "Vixen"*, 35 Ohio St.2d 215, 301 N.E.2d 880 (1973); *Price v. Commonwealth*, 214 Va. 490, 201 S.E.2d 798, cert. denied, 419 U.S. 902, 95 S.Ct. 186, 42 L.Ed.2d 148 (1974).

A number of the decisions listed above were based upon the dubious premise that the requirement of specifically defined sexual conduct added nothing to the prior test for obscenity when that test was considered together with the requirement that a criminal statute give fair warning of the prohibited conduct. *Hall v. Commonwealth*, supra; *State ex rel. Wampler v. Bird*, supra; *State v. Little Art. Corp.*, supra; *Price v. Commonwealth*,

The Commonwealth, however, requests that we now construe section 5903(b) so that it will meet the requirements of *Miller*. It proffers two suggested constructions which it contends would accomplish this purpose.

The first of the suggested constructions would adopt the definition of "sexual conduct" contained in section 5903(e)(3) as a limit on the application of section 5903 (a). That definition provides:

> " 'Sexual conduct' means acts of masturbation, homosexuality, sexual intercourse, or physical contact with a person's clothed genitals, pubic area, buttocks or, if such a person be a female, breast."

At first glance, this suggested use of a definition in one subsection to give the necessary definiteness to another subsection has considerable attraction. Compare, *Commonwealth v. Morgan*, 460 Pa. 112, 117, 331 A.2d 444, 446 (1975); 2A J. Sutherland, Statutes and Statutory Construction § 47.16 (4th ed. C. Sands 1973). However, on more careful consideration, the suggested construction proves unacceptable.

■ The definitions contained in subsection (e) are explicitly limited to use in subsections (c) and (d). By itself, this would not be an insurmountable obstacle to the suggested construction, for it is our duty to so construe a statute as to sustain its validity if such a construction is fairly possible. Statutory Construction Act, 1 Pa.C.S. § 1922(3) (Supp.1974); *Bentman v. Seventh Ward Democratic Executive Committee*, 421 Pa. 188, 218 A.2d 261 (1966).

■ What makes the suggested construction unacceptable is the purpose of the limitation on the use of the

supra. In light of the considerable effort expended on discussion of the requirement of specific definition in the *Miller* opinion, see 413 U.S. at 25–26, 93 S.Ct. at 2615, and the nature of the examples given of definitions which would satisfy the requirement, see id. and discussion in text accompanying note 11 infra, we cannot assume that this aspect of the *Miller* test is a nullity.

definitions in subsection (3). The provisions of the statute to which the definitions apply [13] restrict the availability of sexually-oriented materials to persons under the age of 17 years, while the provision under consideration here restricts the availability of obscene matter to adults. We cannot presume that the General Assembly would wish to restrict adults to receiving materials fit for children. As Judge Learned Hand wrote in *United States v. Kennerley*, 209 F. 119, 121 (S.D.N.Y.1913):

> "To put thought in leash to the average conscience of the time is perhaps tolerable, but to fetter it by the necessities of the lowest and least capable seems a fatal policy."

The second construction suggested by the Commonwealth derives from language in *Miller* itself. After stating the applicable standard, the Court continued:

> "We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under . . . the standard announced in this opinion, *supra*:
>
> (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
>
> (b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

413 U.S. at 25, 93 S.Ct. at 2615.[14]

13. See note 8 supra.

14. The Court also cited "Oregon Laws 1971, c. 743, Art. 29, §§ 255–262, and Hawaii Penal Code, Tit. 37, §§ 1210–1216, 1972 Hawaii Session Laws, Act 9, c. 12, pt. II, pp. 126–129, as examples of state laws directed at depiction of defined physical conduct, as opposed to expression." 413 U.S. at 25 n. 6, 93 S.Ct. at 2615 n. 6. The pertinent provisions of the Oregon statute are quoted in *People v. Ridens*, 59 Ill.2d 362, 386, 321 N.E.2d 264, 276–77 (1974) (dissenting opinion).

In the companion case of *United States v. 12 200-ft. Reels of Super 8mm. Films,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973), which arose under a federal statute, the Court remarked in a footnote:

"We further note that, while we must leave to state courts the construction of state legislation, we do have a duty to authoritatively construe federal statutes where ' "a serious doubt of constitutionality is raised" ' and ' "a construction of the statute is fairly possible by which the question may be avoided." ' [citations omitted] If and when such a 'serious doubt' is raised as to the vagueness of the words 'obscene,' 'lewd,' 'lascivious,' 'filthy,' 'indecent,' or 'immoral' as used to describe the regulated material in [certain federal statutes], we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific 'hard core' sexual conduct given as examples in *Miller* . . . ."

Id. at 130 n. 7, 93 S.Ct. at 2670 n. 7.

The Commonwealth urges us to construe the word "obscene," as used in section 5903(b) to refer only to the type of material indicated by the Supreme Court's "examples." [15] We conclude that we cannot so construe the statute, even to save its validity.

15. This approach has been adopted by a number of jurisdictions. *Pierce v. State,* 292 Ala. 473, 296 So.2d 218 (1974); *Gibbs v. State,* 255 Ark. 997, 504 S.W.2d 719 (1974); *Rhodes v. State,* 283 So.2d 351(Fla.1973) (prospective application only); *People v. Ridens,* 59 Ill.2d 362, 321 N.E.2d 264 (1974); *Mangum v. Maryland State Bd. of Censors,* 273 Md. 176, 328 A.2d 283 (1974); *State v. Welke,* 298 Minn. 402, 216 N.W.2d 641 (1974) (prospective application only); *State v. DeSantis,* 65 N.J. 462, 323 A.2d 489 (1974) (prospective application only); *State v. Bryant,* 285 N.C. 27, 203 S.E. 2d 27, cert. denied, 419 U.S. 974, 95 S.Ct. 238, 42 L.Ed.2d 188 (1974); *State v. Watkins,* 262 S.C. 178, 203 S.E.2d 429 (1973), cert. denied, 418 U.S. 911, 94 S.Ct. 3204, 41 L.Ed.2d 1157 (1974); *West v. State,* 514 S.W.2d 433 (Tex.Cr.App.1974); *State v. J–R*

■ What the Commonwealth urges is not mere construction but wholesale rewriting. The proposed construction is not even *a* possible meaning of the words of the statute when used in their ordinary senses. It draws no support from either surrounding language in the same statute, compare *Commonwealth v. Morgan*, 460 Pa. 112, 116, 331 A.2d 444, 446 (1975); 2A J. Sutherland, Statutes and Statutory Construction § 47.16 (4th ed. C. Sands 1973), or other statutes in pari materia, see Statutory Construction Act, 1 Pa.C.S. § 1932 (Supp. 1974); 2A J. Sutherland, Statutes and Statutory Construction, supra § 45.11. Insofar as any intention of the General Assembly is concerned, the proposed construction is entirely arbitrary.

Even the necessity for stretching the statutory language might not prevent adoption of a construction which would preserve the validity of the statute were there only one construction which would do so. This was the basis for our former construction adding the elements of patent offensiveness and utter lack of social value to those specifically enumerated in the statute. See *Commonwealth v. LaLonde*, 447 Pa. 364, 368 n. 4, 288 A.2d 782, 784–85 n. 4 (1972). The First Amendment, as then understood, forbade the enforcement of any regulation of obscenity which failed to include those elements in the definition. In the present case, however, there are many possible specific definitions of sexual conduct which might be permissible under the First Amendment and we cannot choose among them, in the absence of guidance from the General Assembly, without intruding upon the legislative province.

This point was succinctly put by Justice Calogero of the Louisiana Supreme Court in *State v. Shreveport News Agency*, La., 287 So.2d 464 (1974), where that court also

*Distributors, Inc.*, 82 Wash.2d 584, 512 P.2d 1049 (1973), cert. denied, 418 U.S. 949, 94 S.Ct. 3217, 41 L.Ed.2d 1166 (1974) (semble) (may have been applying pre-*Miller* construction); *State ex rel. Chobot v. Circuit Court*, 61 Wis.2d 354, 212 N.W.2d 690 (1973).

refused to redraft the obscenity statute before it to comply with *Miller*.

"[T]he State here asks us to construe Louisiana's non-specific, vague statute as prohibiting certain specified conduct.

"But what, or which conduct? The State would argue that we have several options. There are two examples of such specifically described conduct in the *Miller* decision itself. That would suffice. Or why not the obscenity statute adopted by the State of Hawaii, or the State of Oregon? They each have a good one. Well, for that matter, why not engraft onto Louisiana's obscenity statute the specific conduct outlined in the obscenity ordinance of the City of New Orleans. After all, it was passed by the New Orleans City Council after, and in response to *Miller*, and being a studied effort on their part may well comply with the United States Constitutional standards outlined in *Miller*.

". . . [W]e have properly concluded in our opinion that it is not this Court's province to write an obscenity law for the State of Louisiana, but rather the State Legislature's."

Id., 287 So.2d at 472 (concurring opinion).

As a final consideration, it would be peculiarly inappropriate for us to engage in statutory draftsmanship without legislative guidance, for we must ultimately pass upon the validity of the resulting legislation under article I, section 7 of the Pennsylvania Constitution. We therefore decline to embark upon any such foray into the legislative sphere. In so doing we join the position of our own Superior Court[16] and the Supreme courts of several other jurisdictions.[17]

**16.** *Commonwealth v. Winkleman*, 230 Pa.Super. 265, 326 A.2d 496 (1974) (holding unconstitutional Act of June 24, 1939, P.L. 872, § 528, as amended (formerly codified as 18 P.S. § 4528), repealed by Act of December 6, 1972, P.L. 1605, No. 334, § 5). The statute held unconstitutional in *Winkleman* prohibited "any dramatic,

**17.** See note 17 on page 452.

■ We therefore conclude that section 5903(a) fails to satisfy the *Miller* standard and therefore may not constitutionally be applied unless and until it is amended to specifically define the sexual conduct whose depiction or description is to be regulated thereby.

## II

■ We next turn to the portion of the criminal complaint charging violation of section 6504 of the Crimes Code.[18]  This accusation was contained in count two of the complaint, which read:

"[Defendants] did set up and maintain a public and common nuisance by exhibiting, or causing to be exhibited, grossly obscene films for a consideration. [The allegations regarding the nature of the films in count one were then incorporated by reference.]"

Appellees contended in their motion to quash the complaint that (1) the conduct described in the complaint does not constitute a "common or public nuisance" within the meaning of section 6504 and (2) the concept of "public nuisance," if used as a standard to restrict expression is unconstitutionally vague and overbroad.  The trial court concluded that section 6504 could not constitutionally be applied to the conduct charged in the complaint and therefore quashed count two.  We agree.

Section 6504 does not define the term "common or public nuisance."  However, that section reenacts. lan-

theatrical, operatic, or vaudeville exhibition or the exhibition of fixed or moving pictures of an obscene nature."

17.  *Mohney v. State,* Ind., 300 N.E.2d 66 (1973); *State v. Wedelstedt,* Iowa, 213 N.W.2d 652 (1973); *State v. Shreveport News Agency,* La., 287 So.2d 464 (1973); *Commonwealth v. Horton,* Mass., 310 N.E.2d 316 (1974); *Art Theater Guild, Inc. v. State,* Tenn., 510 S.W.2d 258 (1974).

18.  See note 2 supra.

guage formerly contained in section 612 of the Penal Code.[19] Consequently, we must look to constructions of the prior statute to ascertain the meaning of section 6504. Statutory Construction Act, 1 Pa.C.S. §§ 1922(4), 1962 (Supp.1975).

However, past appellate cases involving criminal prosecutions for maintaining a public nuisance have not attempted to define the term. They have instead simply decided whether to append the label "public nuisance" without stating reasons for the decision. Generalization is further hampered by the fact that the great bulk of these cases have concerned a single type of conduct: obstructing a public highway.[20] Nevertheless, it does appear from the few cases involving other types of conduct [21] that the offense is defined by reference to the corresponding common law crime.

19. Act of June 24, 1939, P.L. 872, § 612 (formerly codified as 18 P.S. § 4612 (1963)), repealed by Act of December 6, 1972, P.L. 1605, No. 334, § 5. In addition to the provisions carried forward into § 6504 provided:

"All obstructions to private roads, laid out according to law, shall be nuisances, which would be nuisances in cases of obstructions to public roads or highways.

"Whoever keeps or exhibits any gaming table, device or apparatus to win or gain money or other property of value, or engages in gambling for a livelihood, or aids or assists others to do so, or who sells tickets or policies in a lottery, is guilty of nuisance."

20. *Commonwealth v. Royce*, 152 Pa. 88, 25 A. 162 (1892); *Commonwealth v. Hauck*, 103 Pa. 536 (1883); *Northern Central Ry. Co. v. Commonwealth*, 90 Pa. 300 (1879); *Barker v. Commonwealth*, 19 Pa. 412 (1852); *Commonwealth v. Church*, 1 Pa. 105 (1845); *Commonwealth v. Milliman*, 13 Serg. & R. 402 (Pa.1825); *Commonwealth v. Passmore*, 1 Serg. & R. 217 (Pa.1814); *Commonwealth v. Mock*, 23 Pa.Super. 51 (1903); *Commonwealth v. Plymouth Twp.*, 19 Pa.Super. 408 (1902); *Commonwealth v. Llewellyn*, 14 Pa.Super. 214 (1900); *Commonwealth v. Shoemaker*, 14 Pa.Super. 194 (1900); *Commonwealth v. Jackson*, 10 Pa.Super. 524 (1899); *Commonwealth v. Cassell*, 1 Pa.Super. 476 (1896).

21. *Commonwealth v. Linn*, 158 Pa. 22, 27 A. 843 (1893) (indictment charging that the defendant "did, on the public streets and highways, profanely curse and swear, and take the name of God in vain, to the evil example and to the common nuisance of the good citizens . . . of Pennsylvania" held insufficient to

Dean Prosser has briefly sketched the outlines of this concept at common law:

"No better definition of a public nuisance has been suggested than that of an act or omission 'which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all Her Majesty's subjects.' The term comprehends a miscellaneous and diversified group of minor criminal offenses, based on some interference with the interests of the community, or the comfort or convenience of the general public. It includes interferences with the public health, as in the case of a hogpen, the keeping of diseased animals, or a malarial pond; with the public safety, as in the case of the storage of explosives, the shooting of fireworks in the streets, harboring a vicious dog, or the practice of medicine by one not qualified; with public morals, as in the case of houses of prostitution, illegal liquor establishments, gambling houses, *indecent exhibitions*, bullfights, unlicensed prize fights, or public profanity; with the public peace, as by loud and disturbing noises, or an opera performance which threatens to cause a riot; with the public comfort, as in the case of bad odors, smoke, dust and vibration; with public convenience, as by obstructing a highway or a navigable stream, or creating a

charge the crime in the absence of an allegation that it was done "in the presence and hearing of citizens of the Commonwealth passing and repassing on the public streets"); *Delaware Div. Canal Co. v. Commonwealth*, 60 Pa. 367 (1869) (carelessly maintaining canal so that water escaped and formed pools of stagnant water producing "miasmic vapors" to the nuisance of the public held indictable); *Commonwealth v. Mohn*, 52 Pa. 243 (1866) (being a "common scold" and uttering "wicked, scandalous and infamous words" upon a public highway in the hearing of citizens with intent "to debauch and corrupt" their morals held indictable); *Commonwealth v. Van Sickle*, 4 Clark 104, 7 Pa.L.J. 104 (Sup.Ct. 1845) (maintaining a hog pen within the limits of a city held indictable); *Commonwealth v. McKarski*, 208 Pa.Super. 376, 222 A. 2d 411 (1966) (false allegation to a police officer that defendant had been struck by a truck and injured held not to constitute public nuisance).

condition which makes travel unsafe or highly disagreeable, or the collection of an inconvenient crowd; and in addition, such unclassified offenses as eavesdropping on a jury, or being a common scold."

W. Prosser, Law of Torts § 88, at 583–85 (4th ed. 1971) (emphasis added, footnotes omitted); accord, 2 R. Anderson, Wharton's Criminal Law & Procedure, §§ 819–40 (1957).[22] This Court has used essentially this standard in passing upon civil actions to abate a public nuisance. E. g., *Commonwealth v. Barnes & Tucker Co.*, 455 Pa. 392, 410–14, 319 A.2d 871, 881–83 (1974) (discharge of acid mine drainage held a public nuisance); *Pennsylvania SPCA v. Bravo Enterprises*, 428 Pa. 350, 359–61, 237 A.2d 342, 348 (1968) (bullfighting held a public nuisance);[23] *Reid v. Brodsky*, 397 Pa. 463, 156 A.2d 334 (1959) (conduct of taproom in residential neighborhood held a public nuisance).[24]

We need not consider the serious problems of vagueness which might arise from the general use of this standard in criminal prosecutions, for it is clear that the

**22.** "A nuisance as a criminal offense is the misconduct of the defendant or his unreasonable use of his property with the result that unreasonable annoyance, inconvenience, or injury is caused the public."
2 R. Anderson, supra § 819, at 683–84.

**23.** "Injury to the public is the essence of a public nuisance." 428 Pa. at 360, 237 A.2d at 348.

**24.** " ' "It has been said that a 'fair test as to whether a business lawful in itself, or a particular use of property, constitutes a nuisance, is the reasonableness or unreasonableness of conducting the business of making the use of the property complained of in the particular locality and in the manner and under the circumstances of the case.' . . . It has also been said: Whether the use is reasonable generally depends upon many and varied facts. No hard and fast rule controls the subject. A use that would be reasonable under one set of facts might be unreasonable under another. What is reasonable is sometimes a question of law, and at other times, a question of fact. No one particular fact is conclusive, but the inference is to be drawn from all the facts proved whether the controlling fact exists that the use is unreasonable." . . .' "
397 Pa. at 469–70, 156 A.2d at 338.

standard for determination of what constitutes a "common or public nuisance" under section 6504 is considerably less specific than that contained in section 5903, which we have already found defective under *Miller*. Consequently, *Miller* forbids the use of section 6504 to criminally punish expression on the basis of obscene content. Because no other basis is offered for declaring the conduct charged in the complaint to be a "common or public nuisance," the complaint must be quashed.

## III

Having thus disposed of the criminal proceeding, we turn to the action in equity. In that section the Commonwealth seeks an injunction against future display by appellee MacDonald of the two films involved in this action on the ground that their exhibition constituted a public nuisance. MacDonald filed preliminary objections in the nature of a demurrer. The trial court sustained these objections and dismissed the complaint on the ground that the invalidity of the obscenity statute left "no legal basis upon which the films in question can be determined to be obscene." We affirm.

■ Preliminary objections admit, for the purpose of testing the sufficiency of the complaint, all properly pleaded facts, but not conclusions of law. *Ross v. Shawmut Development Corp.*, 460 Pa. 328, 331 n. 2, 333 A.2d 751, 752 n. 2 (1975); *Balsbaugh v. Rowland*, 447 Pa. 423, 426, 290 A.2d 85, 87 (1972). The complaint contained allegations regarding the character of the films [25] and the intention of MacDonald to continue displaying them. With regard to the characterization of their display as a public nuisance, it further alleged:

"The films mentioned above have been presented by the Defendant as X-rated movies, but without notice

25. Because our disposition of this case rests on grounds unrelated to the content of these particular films, we need not consider these allegations.

that they are, in fact, hard core pornographic movies and the basest form of obscenity.

.    .    .    .    .    .    .    .

"The display of the above films constitute a public nuisance for the following reasons:

A. They graphically portray perverted sexual acts that tend to corrupt and adversely affect the morals and welfare of the public;

B. the owner obtains money for admission under the false pretense that the films provide some socially acceptable form of entertainment when the films rather display obscene materials not protected by the First Amendment of the Constitution of the United States, and are utterly without redeeming social value;

C. no warning concerning the true nature of the obscene acts has been given by the Defendant prior to the entry of members of the public;

D. under the law, children, when accompanied by their parents, are permitted to view the film;

E. it is highly unlikely that the Commonwealth would be able to successfully and safely prevent all persons under the age of seventeen (17) years of age from viewing the said film; [and]

F. the content and suggestions set forth in the films are a danger to the public health and welfare."

The Commonwealth urges three legal bases upon which it contends an injunction may be founded: section 5903(h) of the Crimes Code,[26] the Act of June 23, 1931,[27]

26. 18 Pa.C.S. § 5903(h) (1974). That subsection provides as follows:

"(h) Injunction.—The district attorney of any county in which any person sells, lends, distributes, exhibits, gives away or shows, or is about to sell, lend, distribute, exhibit, give away or show, or has in his possession with intent to sell, resell, lend, distribute, exhibit, give away or show, any obscene litera-

27. See note 27 on page 458.

458

and the common law of public nuisance.[28]   We shall consider these in reverse order.

■   A thing may be a public nuisance because it is so declared by statute, either explicitly [29] or implicitly.[30] Alternatively, it may be declared a nuisance as a matter of common law if, though not prohibited by statute, it

ture, book, magazine, pamphlet, newspaper, storypaper, paper, comic book, writing, drawing, photograph, figure or image, or any written or printed matter of an obscene nature, or any article or instrument of an obscene nature, may institute proceedings in equity in the court of common pleas of said county for the purpose of enjoining the sale, resale, lending, distribution, exhibit, gift or show of such obscene literature, book, magazine, pamphlet, newspaper, storypaper, paper, comic book, writing, drawing, photograph, figure or image, or any written or printed matter of an obscene nature, or any article or instrument of an obscene nature, contrary to the provisions of this section, and for such purposes jurisdiction is hereby conferred upon said courts.   A preliminary injunction may issue and a hearing thereafter be held thereon in conformity with the Rules of Civil Procedure upon the averment of the district attorney that the sale, resale, lending, distribution, exhibit, gift or show of such publication constitutes a danger to the welfare or peace of the community.   The district attorney shall not be required to give bond."

27.   P.L. 1178, 68 P.S. §§ 467–73 (1965).   The pertinent portions of the Act provide as follows:

"Any building, or part of a building, used for the purpose of fornication, lewdness, assignation, and/or prostitution is hereby declared to be a common nuisance;  and any person who maintains such a common nuisance shall be guilty of a misdemeanor, and, upon conviction, shall be sentenced to imprisonment for not more than one year, or pay a fine not exceeding one thousand dollars, or both, at the discretion of the court."
Id. § 1, 68 P.S. § 467.

"An action to enjoin any nuisances defined in section one of this act may be brought, in the name of the Commonwealth of Pennsylvania, by the Attorney General thereof or by the district attorney of the county concerned.   Such action shall be brought and tried as an action in equity in the court of common pleas of the county."
Id. § 3, 68 P.S. § 469.

28.   See notes 17–21 supra and accompanying text.

29.   See note 24 supra.

30.   See *Pennsylvania SPCA v. Bravo Enterprises*, 428 Pa. 350, 359–61, 237 A.2d 342, 348 (1968) (bullfighting is public nuisance because proscribed by statute, even though statute does not explicitly declare it to be public nuisance).

unreasonably interferes with the rights of the public.[31] Because the statutes [32] referred to by the Commonwealth specifically provide for injunctions independently of the common law doctrine of public nuisance, we need only consider whether the conduct alleged in the complaint constitutes a public nuisance because it unreasonably interferes with the rights of the public.

■ This precise theory of common law public nuisance was urged in *Grove Press, Inc. v. City of Philadelphia*, 418 F.2d 82 (3rd Cir. 1969), also an action to enjoin exhibition of a motion picture. The Third Circuit, in an opinion by Judge Aldisert, held that the First Amendment forbade an injunction based upon such a theory:

"We have concluded that as a standard for regulating First Amendment rights, neither 'injury to the public,' nor 'unreasonableness,' standing alone, is sufficiently narrow or precise to pass constitutional muster. Each is too elastic and amorphous a standard by which to restrain the exercise of free expression. What is encountered with the sprawling doctrine of public nuisance is an attempt to restrict First Amendment rights by means analogous to those under 'a statute sweeping in a great variety of conduct under a general and indefinite characterization, and leaving to the executive and judicial branches too wide a discretion in its application.' *Cantwell v. Connecticut*, 310 U.S. 296, 308, 60 S.Ct. 900, 905, 84 L.Ed. 1213 (1940).

"The common law of public nuisance may be a perfectly valid method by which to implement a state's police power in certain defined circumstances where, for

31. See *Commonwealth v. Barnes & Tucker Co.*, 455 Pa. 392, 410–14, 319 A.2d 871, 881–83 (1974), (discharge of acid mine drainage); *Reid v. Brodsky*, 397 Pa. 463, 156 A.2d 334 (1959) (conduct of taproom in a residential neighborhood).

32. These are section 5903 of the Crimes Code and the Act of June 23, 1931. See notes 1, 23, & 24 supra.

example, it is used to restrain that which is prohibited by other constitutionally appropriate standards. It may not be used, however, both to define the standards of protected speech and to serve as the vehicle for its restraint."

Id. at 88. We agree with this analysis and therefore hold that the Commonwealth is not entitled, under a theory of common law public nuisance, to the injunction it seeks.[33]

We next turn to the Commonwealth's contention that an injunction might issue in this case under the Act of June 23, 1931. That statute authorizes an injunction against the use of any building "for the purpose of fornication, lewdness, assignation, and/or prostitution."[34] The Commonwealth urges that "lewd" is a synonym for "obscene," citing Black's Law Dictionary, at 1052 (4th ed. 1957),[35] and that the statute therefore forbids the use of a building to exhibit obscene materials. We do not agree.

Far more important than mere dictionary definitions is the statutory context in which the word "lewdness" appears. See, e. g., Commonwealth v. Morgan, 460 Pa. 112, 117, 331 A.2d 444, 446 (1975); 2A J. Sutherland, Statutes and Statutory Construction § 47.16 (4th ed. C. Sands 1973). That context proscribes use of any build-

---

**33.** This disposition of the attempt to obtain an injunction based upon a theory of common law public nuisance renders it unnecessary to decide the dispute between the parties as to the authority of the district attorney to maintain an action in equity on such a theory. See Duggan v. Guild Theatre, Inc., 436 Pa. 191, 195, 258 A.2d 858, 860–61 (1969) (opinion announcing the judgment) (district attorney has implied authority to seek injunction against exhibition of obscene motion picture).

**34.** See note 24 supra.

**35.** The Commonwealth fails to mention that the definition continues: "Lustful, indecent, lascivious, lecherous." This sense of "lewd" is in accord with the construction we adopt. Moreover the statutory term is not "lewd' but "lewdness." The primary definition of "lewdness" given by the Commonwealth's own authority is "gross and wanton indecency in sexual relations."

ing "for the purpose of fornication, . . . assignation, and/or prostitution." All of these forbidden purposes involve illicit sexual *conduct*, thus strongly indicating a legislative intention to proscribe only purposes of this type when it used the word "lewdness." Such a construction has the further advantage of obviating any problems of vagueness which might be entailed by construing the term "lewdness" in a broader fashion.[36]

We therefore hold that the Act of June 23, 1931, proscribes only the use of a building for the purpose of engaging in illicit sexual conduct. Because the complaint does not allege that any building is being so used, there is no basis for issuance of an injunction under the Act of June 23, 1931.

The final basis on which the Commonwealth seeks to predicate an injunction is section 5903(h) of the Crimes Code.[37] This section authorizes injunctive proceedings to prevent the "exhibit . . . or show of [any] obscene . . . photograph, figure or image." However, it relies upon the definition of obscene contained in section 5903(b),[38] which we have held inadequate to satisfy the *Miller* standard. Consequently, if that standard applies to injunctive proceedings as well as criminal prosecutions, the Commonwealth's action must fail. We conclude that the *Miller* standard does apply to injunctive proceedings. Therefore, the Commonwealth is not entitled to an injunction under section 5903(h) in the absence of a definition of obscenity which complies with the requirements of *Miller*.

---

**36.** See generally *Grayned v. Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972), and cases there cited; Note, The Void for Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67 (1960). We clearly must construe this statute in light of the vagueness doctrine because it makes the conduct described criminal in addition to authorizing injunctive proceedings.

**37.** See note 23 supra.

**38.** See note 1 supra.

The starting point for our analysis must be *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973) [hereinafter *Paris Adult Theatre*]. Decided the same day as *Miller, Paris Adult Theatre* was a case in which the Georgia courts had concluded that exhibition of two motion pictures should be enjoined on the ground of obscenity. After rejecting the various arguments of the petitioners to the effect that their conduct was immunized from regulation by the First Amendment, the Supreme Court vacated the judgment and remanded for further proceedings:

> "[N]othing precludes the State of Georgia from the regulation of the allegedly obscene material exhibited in Paris Adult Theatre I or II, *provided that the applicable Georgia law, as written or authoritatively interpreted by the Georigia courts, meets the First Amendment standards set forth in Miller v. California, supra,* [413 U.S.] at 23–25 [93 S.Ct. at 2614–2616]. The judgment is vacated and the case remanded to the Georgia Supreme Court for further proceedings not inconsistent with this opinion and *Miller v. California, supra.* See *United States v. 12 200-Foot Reels of Super 8mm. Film,* [413 U.S.] at 130 n. 7 [93 S.Ct. at 2670 n. 7]."

413 U.S. at 69–70, 93 S.Ct. at 2642 (emphasis added).

Both the language emphasized in the above passage and the citation to *United States v. 12 200-ft. Reels of Super 8mm. Film* [39] clearly indicate that the *Miller* standard is fully applicable to injunctive proceedings such as that involved in *Paris Adult Theatre.* This conclusion is bolstered by the fact that it represents the consensus of all jurisdictions which have considered the standard to be applied in injunctive proceedings since the decision in *Paris Adult Theatre.* See *Slaton v. Paris Adult Theatre*

---

**39.** The pertinent portion of the cited footnote is set forth in text at page 298 supra.

*I*, 231 Ga. 312, 201 S.E.2d 456 (1973), cert. denied, 418 U.S. 939, 94 S.Ct. 3227, 41 L.Ed.2d 1173 (1974) ; *Hall v. Commonwealth*, 505 S.W.2d 166 (Ky.1974) ; *Mangum v. Maryland State Board of Censors*, 273 Md. 166, 328 A.2d 283 (1974); *State ex rel. Wampler v. Bird*, 499 S.W.2d 780 (Mo.1973) ; *State ex rel. Keating v. A Motion Picture Film Entitled "Vixen"*, 35 Ohio St.2d 215, 301 N.E. 2d 880 (1973); *Art Theatre Guild, Inc. v. State*, Tenn., 510 S.W.2d 258 (1974).

Because the definition of obscenity applicable in proceedings under section 5903(h) is inadequate to satisfy the *Miller* standard, the First Amendment forbids issuance of any injunction under that section unless and until an adequate definition is supplied by the GeneralAssembly.

Order quashing criminal complaint affirmed. Decree dismissing complaint in equity affirmed. Each party pay own costs.

EAGEN, O'BRIEN and NIX, JJ., concur in the result.

JONES, C. J., dissents.

MANDERINO, J., did not participate in the consideration or decision of these cases.