## Commonwealth v. Brown

*Gaylord Dissinger, Assistant District Attorney*, for Commonwealth.

*William Fulton, Public Defender*, for defendant.

DOWLING, *J.*, May 19, 1978—Defendant, a single mother of five children, apparently embarked on the sea of parenthood without a paddle, for a quintet of daughters, Laverne, Juanita, Donza, Annette and Kiona, during the summer of 1977, terrorized the 1600 block of Market Street, Harrisburg, resulting in the mother's arrest for and conviction of maintaining a public nuisance, which verdict is challenged by a motion in arrest of judgment.

The testimony developed at the non-jury trial disclosed that Brenda continually left her children, ranging in age from 6 to 17, alone and unsupervised, which put them upon the streets at all hours of the day and night, resulting in a constant annoyance and harassment to the good people of their residential area. Defendant's brood were responsible for physically beating neighborhood children, threatening physical violence to others, name calling, uttering profanity and other vile language, being loud and boisterous, playing loudly amplified music, allowing unruly crowds of youths to gather around their residence, throwing rocks at people, spitting and throwing trash on the property of others, including into the homes, and knocking on doors and ringing doorbells. In fact, it was not uncommon for these incidents to occur up to 3 a.m. in the morning, thus denying many the soothing balm of sleep, heralded as a divine gift that "knits the

raveled sleeve of care." One of the residents testified that the noise was such that it even awakened his deaf wife.

Brenda took umbrage when the neighbors did not view this as simply involving a group of happy-go-lucky kids sowing their wild oats and responded to complaints by declaring that she was turning her daughters loose on the neighborhood and that the neighbors would pay for their calls for police assistance;[1] and pay they did.

Various efforts were made to abate the situation with police, juvenile and community relation officers attempting to intervene. The frustration of the complainants was compounded by defendant's claim that since she, her daughters, and her daughters' daughters were on welfare, nothing could be done to her, that she could not be held responsible for her children's conduct and that since they were minors, the law could do nothing to them either. Finally, a number of neighbors circulated a petition to the effect that defendant and her children were a public nuisance, as a result of which a criminal complaint was filed. At the trial, in addition to the prosecuting officer, some seven signatories of the petition testified as to the various occurrences. Defendant did not testify, nor did she present any evidence.

The issue presented in defendant's post-trial motion is whether her conduct in failing to control and supervise her children with the resulting annoyance, inconvenience and injury to the residential neighborhood is sufficient in law and evidence

---

1. During the latter part of 1977, the police were called to the neighborhood approximately 15 times because of complaints concerning defendant's children.

to sustain her conviction for violation of section 6504 of the Crimes Code of December 6, 1972, P.L. 1482, 18 C.P.S.A. §6504, entitled Public Nuisance.[2]

In passing upon the propriety of the motion and evaluating the sufficiency of the evidence, it must be read in the light most favorable to the Commonwealth, which is entitled to all reasonable inferences arising therefrom. Such a motion, in effect, admits all the facts the Commonwealth's evidence tends to prove: Com. v. Tabb, 417 Pa. 13, 207 A. 2d 884 (1965); Com. v. Barnes, 237 Pa. Superior Ct. 407, 352 A. 2d 107 (1975). While Dean Prosser says: "There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word nuisance,"[3] the conduct of Laverne, Juanita, Donza, Annette and Kiona would be out of place in any respectable jungle and probably not tolerated in a better run zoo. There can be no question that the conduct of defendant's children constituted, in the ordinary common-sense lay meaning of the term, a nuisance. The legal issue presented, however, is whether defendant's failure to control and supervise her children constitutes a public nuisance within the meaning of section 6504 of the Crimes Code.

The term is not therein defined. However, section 6504 reenacts language formerly contained in section 612 of the Penal Code of June 24, 1939, P.L. 872, 18 P.S. §4612, and therefore we may look to the

2. We are aided in the opinion of a somewhat novel situation by an excellent brief submitted by Deputy District Attorney Gaylor Dissinger.

3. Prosser, Law of Torts, §86 (4th Ed. 1971).

constructions of the prior statute to ascertain the meaning of the present one.[4] A large number of appellate decisions involving criminal prosecutions for maintaining a public nuisance have not attempted to define the term but have simply decided whether the conduct in question constitutes a "public nuisance" without stating the reasons for the decision. Generalization is thus hampered but what can be gleaned from the cases is that the offense is defined by reference to the corresponding common law crime.

In Com. v. MacDonald, 464 Pa. 435, 347 A. 2d 290 (1975), the Supreme Court, quoting from Prosser, sketched the outlines of the concept of common law as follows:

"'No better definition of a public nuisance has been suggested than that of an act or omission "which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all Her Majesty's subjects." The term comprehends a miscellaneous and diversified group of minor criminal offenses, based on some interference with the interests of the community, or the comfort or convenience of the general public. It includes interferences with the public health, as in the case of a hogpen, the keeping of diseased animals, or a malarial pond; with the public safety, as in the case of the storage of explosives, the shooting of fireworks in the streets, harboring a vicious dog, or the practice of medicine by one not qualified; with public morals, as in the case of houses of prostitution, illegal liquor establishments, gambling

4. Statutory Construction Act of November 25, 1970, P.L. 707, as amended, 1 Pa.C.S.A., §1922(4).

houses, indecent exhibitions, bullfights, un-licensed prize fights, or public profanity; with the public peace, as by loud and disturbing noises, or an opera performance which threatens to cause a riot; with the public comfort, as in the case of bad odors, smoke, dust and vibration; with public conveni-ence, as by obstructing a highway or a navigable stream, or creating a condition which makes travel unsafe or highly disagreeable, or the collection of an inconvenient crowd; and in addition, such un-classified offenses as eavesdropping on a jury, or being a common scold.'" (pages 454, 455).

The MacDonald case, supra, arose out of a two-pronged effort by the District Attorney of York County to prevent the showing of certain obscene motion pictures. Besides being charged with viola-tion of the former obscenity section, MacDonald was charged with maintaining a public and com-mon nuisance by showing the films "Deep Throat" and "The Devil and Miss Jones." While concluding that section 6504 of the Crimes Code could not con-stitutionally be applied to the conduct charged, the court held that a thing may be a public nuisance because it is so declared by statute, either explicitly or implicitly, or, alternatively, because it is so de-clared as a matter of common law if, though not prohibited by statute, it unreasonably interferes with the rights of the public. Injury to the public is the essence of a public nuisance: Pennsylvania Soc. For Prevention of Cruelty to Animals v. Bravo Enterprises, Inc., 428 Pa. 350, 237 A. 2d 342 (1968); however, the immediate neighborhood con-trols in determining what is a nuisance: Burke v. Hollinger, 296 Pa. 510, 146 Atl. 115 (1929).

Defendant cites this case for the proposition that the nuisance statute is unconstitutionally vague.

However, in MacDonald, the court was concerned with the curtailment of a First Amendment right. Here, of course, no such right is being infringed. Defendant also relies upon Griswold v. Connecticut, 381 U.S. 479 (1965), which recognized the right to privacy and family relationships. This case cannot be read as applicable to the present situation. There the privacy issue involved around a husband and wife's right to the use of contraceptives. No attempt is being made to intrude in the private affairs of the Brown family. It is only their public behavior which is at issue.

A nuisance is such a course of conduct as transgresses the just restrictions upon conduct which the proximity of other persons or property in civilized communities imposes upon what would otherwise be rightful freedom: Marple Twp. v. Grover, 33 Del. Co. 448 (1946), citing Hannun v. Gruber, 346 Pa. 417, 31 A. 2d 99 (1943). The common good certainly requires that parents residing with their children in close proximity to others in an urban residential neighborhood control and supervise their offspring. In neglecting to do a thing required by the common good, defendant created and maintained a public and common nuisance: Com. v. Vital, 46 Luz. 271 (1956). Her children clearly interfered with her neighbor's rights to the comfortable enjoyment of their lives and property.

Defendant's omission in failing to control and supervise her children was expressly ratified by her affirmative action in turning her children loose on the neighborhood after receiving complaints about their misconduct. Defendant's violation of her parental duty to care for her children constituted the minor criminal offense of endangering the welfare

of children (section 4304 of the Crimes Code), interfered with the interests of the community, and caused inconvenience, discomfort and damage to the general public. There was interference with the public health, expectorating on the property of others; interference with the public safety, physically beating, throwing stones at, and threatening other children; interference with the public morals, the uttering of profanity, vile language and name calling; interference with the public peace, being loud and boisterous, playing amplified music and allowing unruly crowds of youths to gather about their residence; interference with the public comfort, the throwing of trash into the property and houses of others; and interference with the public convenience, the ringing of doorbells and the knocking on doors. While isolated instances of misconduct would not be sufficient to establish a public nuisance, the acts of defendant's children were continuous and her absence and failure to supervise and control them habitual: Com. v. Karpinski, 3 D. & C. 2d 36 (1955); Com. v. Hamilton, 52 D. & C. 485 (1945). While injury, discomfort and inconvenience might have been suffered to a greater degree by particular neighbors, such were common to the neighborhood at large.

With no case being found on the precise issue of whether a parent can be held criminally culpable for creating and maintaining a public nuisance by failure to supervise and control one's children, conduct held by common law sufficient to constitute public and common nuisances can be examined and analogized. Defendant is not as contended being held vicariously liable for the conduct of her children but rather her criminal responsibility is

based upon her own conduct in failing to perform an essential duty of parenthood. Legal responsibility has been upheld against one keeping a dangerous, vicious, trespassing and barking dog: Com. v. Carl, 87 Pa. Superior Ct. 110 (1925): for the bleating of goats: Marple Twp. v. Grover, supra; for profane swearing on the streets of an offensive and annoying character which is heard by the citizenry; Com. v. Linn, 158 Pa. 22, 27 Atl. 843 (1893); the amplification of music: Appeal From Ordinance of Ralpho Twp., 31 Northumb. 150 (1959); and the beating of drums by the Salvation Army: City of Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355 (1899).

The residents of the 1600 block of Market Street, Harrisburg, have a right to the quiet and peaceful use and enjoyment of their property. Defendant's wrong and improper conduct violated the rights of her neighbors and she must be held accountable.

If, as Shakespeare said: "[I]t is a wise father that knows his own child,"[5] then it is a foolish mother who controls not her offspring for the streams are bitter when the fountain is poisoned.

Accordingly, we enter the following

## ORDER

And now, May 19, 1978, defendant's motion in arrest of judgment is denied and the district attorney is directed to present her for sentencing.

---

5. W. Shakespeare, Merchant of Venice, Act II, sc. II.