478 A.2d 1334

**COMMONWEALTH ex rel. Richard A. LEWIS,**
**District Attorney**

**v.**

**ALLOUWILL REALTY CORPORATION, INC., a Pennsylvania**
**Corporation and Godwin Heck, Jr., and Anita Heck, Trading**
**and doing business as Maxim's Novelty Shop, Appellants.**

**COMMONWEALTH ex rel. Richard A. LEWIS,**
**District Attorney**

**v.**

**RADELLE INVESTMENT COMPANY and Godwin C. Heck,**
**Jr., Trading and doing business as *Sweden Adult***
***Book Store*, Appellant.**

Superior Court of Pennsylvania.

Argued April 5, 1984.

Filed June 29, 1984.

---

Malcolm M. Limongelli, Wilkes-Barre, for appellants.

Katherene E. Holtzinger, Deputy District Attorney, Harrisburg, for Lewis, appellee.

Before WICKERSHAM, OLSZEWSKI, and HOFFMAN, JJ.

HOFFMAN, Judge:

These appeals are from an injunction order padlocking two adult bookstores as public nuisances pursuant to 68 P.S. §§ 467–73. Because we find appellants' claims meritless, we affirm the order.

On July 29, 1982, Richard A. Lewis, District Attorney for Dauphin County, filed complaints in equity against Allouwill Realty Corp., Inc., and Anita Heck, t/d/b/a Maxim's Novelty Shop, and against Radelle Investment Co. and Godwin C. Heck, Jr., t/d/b/a Sweden Adult Book Store, to abate the use of the premises at 21 North Second Street, Harrisburg, and at 5 North Second Street, Harrisburg, respectively, as common nuisances. On August 24, 1982, the first complaint was amended to add Godwin C. Heck, Jr., as a defendant. The defendants filed separate preliminary objections on August 17–19, 1982. On August 30, 1982, after denying the preliminary objections, a motion for severance and a request for a discovery continuance, the lower court allowed the Commonwealth to begin presenting its case even though the defendants had not yet filed answers, stating that it would render its decision only after

answers were filed and the defendants presented their case. The defendants filed their answers on September 10, 1982, and, on October 1, 1982, the trial concluded. On the same day, after making oral findings of fact and conclusions of law, the lower court ordered the county sheriff to padlock both premises for a one-year period. The sheriff was specifically directed to padlock only the portion of the premises used for the adult bookstores and to make arrangements with the store owners to allow them to remove any and all merchandise located within the stores. On October 4, copies of the order were served upon the defendants and posted, and the two bookstores were padlocked and chained. On October 29, 1982, these appeals were filed by Godwin C. Heck, Jr., and Anita Heck, t/d/b/a Maxim's Novelty Shop, and by Godwin C. Heck, Jr., t/d/b/a Sweden Adult Book Store.[1]

■ Initially, we find the instant appeals properly before us despite appellants' failure to file exceptions. Pa.R.A.P. 311(a)(4) permits an appeal to be filed as of right from an order granting an injunction. *See* Pa.R.A.P. 311(a); *Neshaminy Constructors, Inc. v. Philadelphia, Pennsylvania Building and Construction Trades Council, AFL–CIO,* 303 Pa.Superior Ct. 420, 422 n. 1, 449 A.2d 1389, 1390 n. 1 (1982); *Agra Enterprises, Inc. v. Brunozzi,* 302 Pa.Superior Ct. 166, 169, 448 A.2d 579, 581 (1982).

■ A common nuisance is statutorily defined as "[a]ny building, or part of a building, used for the purpose of fornication, lewdness, assignation, and/or prostitution[.]" Act of June 23, 1931, P.L. 1178, No. 319, § 1, 68 P.S. § 467. An action to enjoin a public nuisance, as defined, may be brought in the name of the Commonwealth by the district attorney of the concerned county. *Id.* § 469. Upon finding the material allegations of the complaint to be true, the

1. On December 8, 1982, appellants filed a statement of matters complained of on appeal. On March 15, 1983, the lower court filed a Pa.R.A.P. 1925 opinion. On August 4, 1983, this Court, per curiam, denied the Commonwealth's motion to quash the appeal without prejudice to renew the jurisdictional argument before the panel.

court may order that the offending building (or part thereof) not be occupied or used for any purpose for one year. *Id.* § 470. Our Supreme Court has construed § 467 to "proscrib[e] only the use of a building for the purpose of engaging in *illicit sexual conduct.*" *Commonwealth v. MacDonald,* 464 Pa. 435, 461, 347 A.2d 290, 304 (1975), *cert. denied,* 429 U.S. 816, 50 L.Ed.2d 75, 97 S.Ct. 57 (1976) (emphasis added). In the instant case, the lower court orally made the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Both Maxim's and Sweden Adult Bookstores sell a variety of adult-oriented material, including films and magazines depicting explicit sexual conduct between heterosexuals, homosexuals, lesbians and sexual acts between humans and animals.

In addition to the magazines and films offered for sale, both stores offer and display sexual paraphernalia and artificial sexual devices.

2. Both Maxim's and Sweden have, in addition to the areas where the films, magazines and sexual devices are displayed and offered for sale, a separate portion where booths are contained; approximately twenty booths in each place.

In these booths are shown films depicting explicit sexual conduct of the type previously described.

3. In a large number of booths showing the explicit sexual films, there are what are known as "glory holes" in the walls separating one booth from the other.

These holes have been described as approximately twelve inches by twelve inches and begin at the location slightly less than two feet off the floor.

4. In the month of January, 1982, officers from the Harrisburg Police Department were in both stores approximately four to six times and were able to plainly see men masturbating in the booths in both stores.

5. Officer Linden B. Gates of the Harrisburg Police Department, arrested two separate individuals; one in Maxim's and one in Sweden after individuals in a nonsolicited fashion, reached through the "glory hole" and indecently assaulted Officer Gates.

6. The interior of the store was unkept and unsanitary, with urine and semen stains throughout the booths and with the restroom facilities lacking any doors.

7. During the month of July, 1982, Officer Woodring of the Harrisburg Police Department returned to both stores and again observed acts of masturbation and was indecently assaulted.

8. A Mr. Sherman W. Buchanan testified that both establishments were centers for sexual activity and that the purpose of the "glory holes" is for sexual conduct from oral intercourse to masturbation to anal intercourse.

Mr. Buchanan also testified that the establishments are not strictly centers for homosexuals, but are also patronized by heterosexual males.

9. The acts of masturbation performed by male patrons within the store and observed by the police are a violation of Section 3127 of the Crimes Code, indecent exposure, which is a misdemeanor.

10. Harrisburg police officers were indecently touched and assaulted within Maxim's Novelty Shop and the Sweden Adult Bookstore, such conduct is a violation of Section 3126, indecent assault, of the Crimes Code, a misdemeanor in Pennsylvania.

11. Harrisburg police officers observed and encountered male patrons of the Sweden Adult Bookstore who solicited them for sexual favor or sexual hire for prostitution, a violation of Section 5902, a misdemeanor in Pennsylvania.

12. In a fifteen-day period, from January 13 through January 28, approximately fifteen incidents of prostitution, indecent assault, indecent exposure occurred in both the Sweden Bookstore and Maxim's Novelty Shop.

From these findings of fact, we make the following Conclusions of Law.

## CONCLUSIONS OF LAW

1. The Act of June 23, 1931, M.L. 1178, 68 Purden's 467, et seq., provides that any building or part of a building used for the purposes of fornication, lewdness assignation and/or prostitution is hereby declared to be a common nuisance.

2. The establishments known as Maxim's Novelty Shop and the Sweden Adult Bookstore, Maxim's Novelty Shop is at 32 North Second Street and the Sweden Adult Bookstore at 5 North Second Street, have been and continue to be common nuisances as defined in the above statute.

By virtue of the lewd conduct occurring therein, including, but not restricted to criminal acts of open lewdness, prostitution, indecent exposure and indecent assaults.

Now the term "common nuisance" may seem somewhat inappropriate to describe these establishments and the activities that are conducted therein, but this concept of a legal nuisance reaches back into the beginnings of our common law.

In one of the few appelate [sic] decisions involving, in part, the Act of 1931, our Supreme Court, in only a few years ago in Commonwealth versus MacDonald, a 1975 decision, 464 PA 435, quoted, with approval, a definition of Dean Prosser on a public nuisance, part of which I think is quite pertinent and they say "No better definition of a public nuisance has been suggested than that of an act of ommission [sic] 'which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all Her Majesty's subjects.' The term comprehends a miscellaneous and diversified group of common offenses, based on some interference with the interest of community or the comfort or convenience of the general public. It includes interference with the public health, as in the case of a hog pen, the keeping of deseased [sic] animals or a malarial

pond..." And then it goes on to say "with public morals as in the case of houses of prostitution, illegal liquor establishments, gambling houses, indecent exhibitions, et cetera."

There are two illustrations in the definition which might, with a little analogizing, fit Maxim's and Sweden, "the keeping of a hog pen and malarial" just as the nauseous odors of a malarial pond breeds desease [sic] and pestulence [sic], so those establishments, by their very construction, that these "glory holes," encourage and spread illegal conduct in a public store.

There should be no place in the center of the capital city of this Commonwealth for "hog pens" or "malarial ponds" or for Maxim's Novelty Shop or the Sweden Adult Bookstore.

In accordance with Section 470 of the Act of 1931, I am ordering the Sheriff of Dauphin County to immediately padlock both premises for a period of one year.

I recognize that the owners of the building are but nominal plaintiffs and only the portion used to conduct these stores is to be so padlocked and if, at some time, they demonstrate to the Court that the premises are going to be used for proper activities, why certainly, an adjustment may be made.

I also realize that the owner of the stores may well wish to remove from the premises, his merchandize, [sic] material and we suggest that he make arrangements to do so with the sheriff. You may adjourn court.

(N.T. October 1, 1982, at 54–59). There is competent evidence in the record supporting the lower court's conclusion that the two premises in question were being used for the purposes of engaging in illegal sexual conduct. Therefore, contrary to appellants' assertion, we find that the injunction order was permissible under the terms of the statute as construed by our Supreme Court. *Commonwealth v. Bonadio*, 490 Pa. 91, 415 A.2d 47 (1980), cited by appellants, held only that the State, in the exercise of its police powers,

could not prohibit consenting adults from *privately* engaging in voluntary deviate sexual intercourse. The *Bonadio* Court, however, recognized the authority of the State to regulate open lewdness, indecent exposure, involuntary deviate sexual intercourse, and indecent assault.

■ Appellants also challenge the constitutionality of 68 P.S. § 467, arguing that the statutory provision is void for vagueness and constitutes a prior restraint in violation of the first and fourteenth amendments to the Federal Constitution and article I, § 7 of the Pennsylvania Constitution. These arguments have no merit. In *Commonwealth v. MacDonald, supra,* our Supreme Court, by construing § 467 to encompass only illegal sexual conduct, expressly obviated any vagueness problems. The Court also rejected the argument that the term "lewd" was an synonym for "obscene" and stated that the statute does not forbid the use of a building to exhibit obscene materials. 464 Pa. 435, 460–61, 347 A.2d 290, 303–304. Therefore, under *MacDonald,* we believe that the constitutional problems of vagueness and prior restraint do not arise in the Commonwealth's instant application of 68 P.S. §§ 467–73. Contrary to appellants' arguments, whether the materials sold in Maxim's Novelty Shop and Sweden Adult Book Store were obscene is not at issue in this case as the illicit sexual activities were the basis for the injunctions. We recognize that the injunction may have had an incidental effect on the dissemination of the printed materials sold in these two adult bookstores; however, we also note that because the order allows appellants to remove their merchandise from the stores and does not prohibit their dissemination, it is conceivable that appellants could continue to sell their books and magazines elsewhere.[2]

2. In contrast, in *Ranck v. Bonal Enterprises, Inc.,* 467 Pa. 569, 359 A.2d 748 (1976), and *Zimmerman v. Philjon, Inc.,* 470 Pa. 409, 368 A.2d 694 (1977), the Court struck down injunctions prohibiting the exhibiting or selling of obscene materials at the adult bookstores involved in those cases pursuant to the Pennsylvania obscenity statute, 18 Pa.C. S.A. § 5903(h). Those cases are clearly distinguishable from the instant injunction which temporarily shut down premises used for the purposes of engaging in illicit sexual conduct pursuant to a valid

■ Appellants argue finally that the lower court should have closed off only the booth area of the bookstores rather than the entire premises because all of the alleged illegal activity occurred in the booth area. We disagree. The lower court's analogizing the entire bookstore premises to a "hog pen" and "malarial pond" is apt. *See* N.T. October 1, 1982, at 58. Although the booth area or "peep show" area is apparently separated from the front sales area in both stores, *see* N.T. August 30, 1982 at 23–29, we conclude from the record that the booth area was an integral part of the bookstores. Sexual paraphernalia was sold in the booth area as well as in the front of the store. (N.T. August 30, 1982 at 25). The general condition of the entire premises was unsanitary with "a foul odor throughout the store". (N.T. August 30, 1982 at 33, 69). Approximately ten-to-twenty people loitered in the booth area for the purposes of engaging in sexual contact and were not asked to leave by the store management. (N.T. August 30, 1982 at 75; October 1, 1982 at 31). Adult bookstores in Harrisburg, including those in the instant case, were generally known to be places where people could go to have "impersonal sexual relations". (N.T. August 30, 1982 at 119–21). Under these circumstances, we find it reasonable to infer that the booths (with their "glory holes") were the main attraction of the adult bookstores and had been purposefully set up by the owners to be so and that the whole atmosphere and attitude of these establishments encouraged and fostered the illicit sexual occurrences.[3]

Accordingly, having rejected appellants' arguments,[4] we hold that the lower court did not abuse its discretion in entering the October 1, 1982 injunction order. *See Nesham-*

public nuisance statute, 68 P.S. §§ 467–73, and did not prohibit the dissemination of the printed materials sold on the premises.

**3.** We note, parenthetically, our incredulity that appellants could be ignorant of the illicit activities going on in their public bookstores.

**4.** Appellants also raised some procedural challenges to the lower court proceedings. However, those claims were not adequately briefed and appellants have given us no reason to reverse on those grounds.

*iny Constructors, Inc. v. Philadelphia, Pennsylvania Building and Construction Trades Council,* AFL–CIO, *supra,* 303 Pa.Superior Ct. at 422, 449 A.2d at 1390 (abuse of discretion standard for appeals from permanent injunction orders).

Affirmed.