625 A.2d 119

COMMONWEALTH ex rel. Ernest PREATE, Jr., Attorney General of the Commonwealth of Pennsylvania

v.

DANNY'S NEW ADAM & EVE BOOKSTORE and Daily Planet News, Inc., Owner of the Fictitious Name Danny's New Adam & Eve Bookstore and Operator of Said Bookstore and Thomas J. Bregatta and Helena Bregatta, his wife, Owners of the premises at which Danny's New Adam & Eve Bookstore operates its business, Appellants.

COMMONWEALTH ex rel. Ernest D. PREATE, Jr., Attorney General of the Commonwealth of Pennsylvania

v.

BOOK BIN EAST and Gersley Kieserman, Newton Kieserman and Stanley Kieserman, Co–Partners, owners of the premises at which Book Bin East operates its business, Appellants.

Commonwealth Court of Pennsylvania.

Argued Dec. 14, 1992.

Decided April 29, 1993.

282

Joel E. Oshtry, for appellants.

John O.J. Shellenberger, Chief Deputy Atty. Gen., Chief of Eastern Region, for appellees.

Before PALLADINO and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Danny's New Adam & Eve Bookstore and the Book Bin East (Appellants) appeal from an order of the Court of Common Pleas of Philadelphia County granting a preliminary injunction to the Pennsylvania Attorney General's Office (Appellee). We sustain the grant of preliminary injunction.

Appellants' establishments are adult bookstores located in Philadelphia. Both establishments sell video tapes, books and magazines, sexual in nature. Both stores also contain video viewing booths equipped with coin-operated video monitors upon which patrons can view sexually-oriented videos. Each video viewing booth adjoins the booth next to it with a common wall between the booths. Agents, conducting an investigation for the Appellee, discovered that a number of the booths had a three-by-five inch hole located between the booths that allowed patrons to have sexual activity with persons in the adjacent booth.

Additionally, the Book Bin East contained a floor designated as the "California Couch Dancing" area where two rooms

are divided by a glass wall. Appellee's agent observed a woman through the glass, as she performed lewd strip-tease dancing. The agent was also offered sex for money.

On July 29, 1992, Appellee filed complaints in equity which sought to abate the use of Appellants' premises as a nuisance pursuant to Section 1 of the Uses of Property Act, Act of June 23, 1931, P.L. 1178, 68 P.S. § 467. Appellee further filed petitions for temporary injunctions (temporary restraining orders) and preliminary injunctions, enjoining the operations of video viewing booths and the "California Couch Dancing area." The Philadelphia County Court of Common Pleas granted the temporary injunctions and scheduled a hearing pursuant to Pa.R.C.P. No. 1531. The trial court held a two-day hearing, limited to the issue of whether the temporary injunctions should become preliminary injunctions, pending a hearing on the merits. On September 3, 1992, the trial court granted the preliminary injunctions, reasoning in part:

> The citizens of the Commonwealth of Pennsylvania will suffer irreparable harm if defendants continue to maintain video viewing booths and areas utilized "California Couch Dancing" where sexual activity has taken place which could lead to the spread of Human Immunodeficiency Virus (HIV) which may result in the fatal illness known as "Acquired Immune Deficiency Syndrome" (AIDS).[1]

The trial judge did not close the other areas of the Appellants' establishments.

On appeal to this Court, Appellants argue that the trial court erred in holding the establishments were "nuisances" because the (1) threat of the spread of AIDS through the alleged sexual activity occurring at their establishments is speculative; and (2) the Uses of Property Act is archaic. Therefore, Appellants assert that the grant of the preliminary

---

**1.** This order granted a preliminary injunction with regard to Appellant, Book Bin East. The trial court granted preliminary injunction with regard to Danny's New Adam & Eve Bookstore, utilizing a similar order. These two Appellants consolidated their appeals for purposes of review in this Court.

injunction directly contravenes their freedom of speech protected by the First Amendment.[2]

■ Our scope of review from a grant of preliminary injunction is limited. We may not review the merits of the case, but only determine whether any apparently reasonable grounds support the trial court's determination. *Novak v. Commonwealth,* 514 Pa. 190, 523 A.2d 318 (1987). We may only interfere with the trial court's order if no grounds exist to support the injunction or the rule of law relied upon was erroneous or misapplied. *Williams v. Children's Hospital of Pittsburgh,* 505 Pa. 263, 479 A.2d 452 (1984).

■ The courts consider the following standards when granting a preliminary injunction: (1) is the injunction necessary to prevent immediate and irreparable harm not compensable in damages; (2) would greater harm result from denying the injunction than from granting it; (3) is the Plaintiff's right to relief clear; and (4) will the status quo be restored if the injunction is granted. *Norwood A. McDaniel Agency v. Foster,* 117 Pa.Commonwealth Ct. 227, 543 A.2d 155 (1988).

■ The trial court implied that the threatened spread of HIV required issuance of the preliminary injunction to prevent immediate and irreparable harm and because no adequate remedy at law exists.

■ In *Muehlieb v. City of Philadelphia,* 133 Pa.Commonwealth Ct. 133, 574 A.2d 1208 (1990), this court adopted the Restatement (Second) of Torts definition of a public nuisance as "an unreasonable interference with a right common to the general public." *Id.* at 140, 574 A.2d at 1211, quoting Restatement (Second) of Torts § 821B. One set of circumstances which support a conclusion that an interference with a public right is unreasonable is whether the conduct in question poses a significant threat to the public health. *Id.* Among other

2. The First Amendment states: "Congress shall make no law respecting establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people to peaceably assemble, and to petition the government for a redress of grievances." U.S. Const. amend. I.

health and scientific groups, the Advisory Health Board of the Pennsylvania Department of Health has declared AIDS to be a communicable disease. 28 Pa.Code § 27.2.

Competent evidence exists in the record to support the trial court's conclusion that sexual conduct, occurring on the Appellants' premises, could lead to the spread of HIV which may result in AIDS. Expert witnesses for both the Appellants and the Appellee testified to this fact. In addition, Ralph Taylor, a patron of Appellants' establishments, testified that he was infected with HIV and that he had, on several occasions, engaged in intercourse in the Appellants' establishments. It is well-settled that even a lawful business may be enjoined from operation if it is shown that, under the particular circumstance, its operation constitutes a public nuisance. *Ranck v. Bonal Enterprises, Inc.*, 467 Pa. 569, 359 A.2d 748 (1976).

The testimony of Taylor and Appellee's agents and expert witnesses also supports a conclusion that greater harm would have resulted from denying the injunction. The threat to public health was ongoing.

■ Further, the Uses of Property Act (Act) gave Appellee a clear right to relief. In its conclusions of law, the trial court relied upon Section 1 of the Act, 68 P.S. § 467, which states: "Any building or part of building used for the purpose of fornication, lewdness, assignation and/or prostitution is declared to be a common nuisance...." The Pennsylvania Supreme Court has specifically reaffirmed the constitutionality of the Act and has held that conduct described in Section 1 includes any illicit sexual conduct. *Commonwealth v. MacDonald*, 464 Pa. 435, 347 A.2d 290 (1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Appellee's agents witnessed first-hand illicit sexual activity, occurring in Appellants' establishments which was clearly proscribed in *MacDonald*. Under Section 3 of the Act, 68 P.S. § 470, the Commonwealth through the Attorney General may bring an action to enjoin a nuisance as defined in Section 1 of the Act.

■ Concerning Appellants' argument that the trial court's reliance upon the Act violated their First Amendment rights,

we find this argument meritless. The Superior Court held the Act applicable to adult bookstores in *Commonwealth ex rel. Lewis v. Allouwill Realty Corp.*, 330 Pa.Superior Ct. 32, 478 A.2d 1334 (1984).[3]

In *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986), the United States Supreme Court held that statutes such as the Act do not offend the First Amendment. In *Arcara*, a bookstore was closed pursuant to a section of the New York Public Health Law which defined places of prostitution, lewdness and assignation, as public health nuisances. The Court held that the closure statute did not single out bookstores or others engaged in First Amendment protected activities. The closure statute was directed at unlawful conduct (i.e. illicit sexual activity) which had nothing to do with books or other expressive activity, protected under the First Amendment. Further, the Court held that the sexual activity carried on in a bookstore manifests no element of protected expression. "First Amendment values may not be invoked merely by linking the words 'sex' and 'books'." 478 U.S. at 705, 106 S.Ct. at 3176.

Like the New York Public Health Law, in *Arcara*, Pennsylvania's Act does not single out bookstores for the imposition of its burden. The Act is aimed at *any* building used for illicit or illegal sexual conduct. That the Appellants' buildings were coincidentally adult bookstores does not excuse the unlawful sexual activity occurring on their premises.

The preliminary injunction here is narrow in scope and aimed at stopping the sexual activity occurring in the video viewing booths and the "California Couch Dancing" area of Appellants' establishments. The status quo is restored, as Appellants' establishments return to being utilized for what is assumed to be their original purpose, as adult bookstores,

---

3. *Allouwill* concerned two adult bookstores in the Harrisburg area that had video viewing booths with holes between the common walls. Harrisburg Police Officers observed sexual activity occurring in the booths. The Superior Court upheld an injunction which padlocked the two adult bookstores as public nuisances pursuant to the Act.

where Appellants are free to continue selling books, magazines and videos, thereby exercising their First Amendment rights.

Accordingly, we affirm the trial court's grant of preliminary injunction pending a full hearing on the merits.

## ORDER

AND NOW, this 29th day of April, 1993, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed.

FRIEDMAN, Judge, dissenting.

I respectfully dissent.

The Commonwealth sought two separate injunctions: (1) an injunction against the operation of video viewing booths at Danny's New Adam & Eve Bookstore (Danny's), and (2) an injunction against the operation of video viewing booths in the Book Bin East and against an activity known as California Couch Dancing, also located in the Book Bin East. The Commonwealth alleged that the video booths in each establishment were operated for the purpose of illicit sexual activity and that California Couch Dancing was operated for purposes of prostitution in violation of section 1 of the Act of June 23, 1931, P.L. 1178, *as amended,* 68 P.S. § 467, popularly known as the Uses of Property Act, and that both operations created a risk of spreading the Human Immunodeficiency Virus (HIV), resulting in risk of immediate and irreparable injury.

The trial court granted both preliminary injunctions. A majority of this court affirms the trial court's Orders on the basis that the activities enjoined would cause immediate and irreparable harm if allowed to continue and that the Uses of Property Act provides a clear right to relief. I dissent because I do not agree that the evidence supports a finding that either the video viewing booths or the California Couch Dancing operation pose a risk of immediate and irreparable harm to the public, nor do I believe that the Uses of Property Act provides a clear right to relief.

We are bound to uphold a preliminary injunction on appeal "if there were any *apparently reasonable grounds* for the action of the court below" in granting it. *Commonwealth v. Coward*, 489 Pa. 327, 340, 414 A.2d 91, 98 (1980). The standard to be followed by a trial court in granting a preliminary injunction is:

> first, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. (citation omitted). Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded.

*Id.* Where the legislature has already determined that the activity should be proscribed, a separate judicial finding of irreparable harm is not required; the court need only find that the illegal activity occurred. *Id.* If the trial court finds that the activity sought to be enjoined is a nuisance *per se*, that it is an illegal activity, the court may enjoin the activity. Alternatively, as applicable here, if there is no finding of a nuisance *per se*, the trial court must find that the injunction is necessary to prevent immediate and irreparable harm not compensable in damages.

With regard to the video viewing booths, I disagree with and dissent from upholding the preliminary injunction against the use of all video viewing booths in Danny's New Adam & Eve Bookstore (Danny's) and in the Book Bin East due to the supposed public health threat which results from the "illicit" sexual activity that occurs in the booths. The existence of a public health threat from the use of the video booths is not supported by any competent evidence in the record, and none of the conduct occurring in the video viewing booths is illegal as a matter of law.

First, I refer to section 1 of the Uses of Property Act, 68 P.S. § 467, relied upon by the majority. This section declares that any building used for "fornication, lewdness, assignation, and/or prostitution" is a "common nuisance." The Pennsylvania Supreme Court has construed this section of the Act to proscribe only the use of a building for illicit sexual conduct. *Commonwealth v. MacDonald,* 464 Pa. 435, 347 A.2d 290 (1975). More recently, the superior court has used the term "illegal sexual conduct" in determining the activities proscribed by the Act and recognized that pursuant to *Commonwealth v. Bonadio,* 490 Pa. 91, 415 A.2d 47 (1980) the Commonwealth "could not prohibit consenting adults from *privately* engaging in voluntary deviate sexual intercourse." *Commonwealth v. Allouwill Realty Corp.,* 330 Pa.Superior Ct. 32, 40, 478 A.2d 1334, 1338 (1984). In *Bonadio* our supreme court stated, "With respect to regulation of morals, the police power should properly be exercised to protect each individual's right to be free from interference in defining and pursuing his own morality but not to enforce a majority morality on persons whose conduct *does not harm others.*" *Id.,* 490 Pa. at 96, 415 A.2d at 50 (emphasis in original). Thus, if the sexual conduct occurring in the video booths is not illegal, the Act does not provide a basis for enjoining use of the video booths as a nuisance.

The Attorney General argues that indecent exposure is an illegal form of sexual conduct which occurs regularly in the video booths. This argument stems from the existence and use of "glory holes" in the walls of the video booths. In each bookstore, some of the video booths had holes cut in the partitions separating the booths. These "glory holes" were used by patrons of the video booths primarily for the purpose of engaging in oral intercourse with the inhabitants of neighboring booths. The "glory holes" may also enable the users of video booths to see into adjoining booths and view any sexual activity occurring there. Because the "glory holes" may enable patrons of the video booths to see the exposed genitalia of other booth occupants, the Attorney General argues that

indecent exposure is a regular and unavoidable incident to the use of the booths at Danny's and the Book Bin East.

However, this argument misperceives the nature and purpose of the criminal statute prohibiting indecent exposure. An indecent exposure is committed only when a person "exposes his genitals under circumstances in which he knows his conduct is likely to cause affront or alarm." 18 P.S. § 3127. The patrons of the video booths never exposed their genitals in the open areas of the stores or to the general public. In fact, those who entered the stores were fully aware of the sexual nature of the businesses. The users of the video booths intentionally exposed their genitals to others only for the purpose of engaging in sexual conduct with presumably like-minded individuals in neighboring booths. Charles Read, an agent of the Attorney General's office, who witnessed some of the purported indecent exposures, stated that he went to the video booths for the sole purpose of investigating sexual conduct among patrons. Mr. Read further admitted that the users of the booths expected privacy. Under these circumstances, the patrons of the video booths did not intend to cause affront or alarm by exposing their genitals. Thus, no reasonable grounds exist for concluding that illegal sexual conduct in the form of indecent exposure regularly occurred in the video booths of Danny's or the Book Bin East.

The Attorney General also complains of a second type of illegal sexual conduct, indecent assault, by referring to one incident in which the occupant of a video booth followed an agent of the Attorney General's office from another booth and grabbed the agent's crotch. Assuming *arguendo* that this action constituted indecent assault, it still does not provide the necessary reasonable grounds for the issuance of an injunction against the use of all of the video booths in two book stores. An injunction may only be granted when harmful conduct is "practically certain" of occurring, and injunctive relief is not available to eliminate a nuisance that is "merely anticipated or threatened." *Ranck v. Bonal Enterprises, Inc.*, 467 Pa. 569, 578, 359 A.2d 748, 752 (1976). The record provides no basis for concluding that nonconsensual sexual contact is "practical-

ly certain" to occur on any regular basis among the users of the video booths. The remote possibility that indecent assaults may occur on the premises of Danny's or the Book Bin East does not justify the granting of the preliminary injunction closing all of the video booths in those two stores.

Although sexual conduct apparently does occur among the users of video booths in Danny's and the Book Bin East, section 1 of the Act, 68 P.S. § 467, prohibits only *illegal* sexual conduct. The sexual conduct which occurs in the video booths is not forcible in nature but rather constitutes only the private conduct of consenting adults. This form of sexual conduct is not prohibited by any Pennsylvania law. *See Bonadio*, 490 Pa. at 96, 415 A.2d at 50. Because the record provides no reasonable basis for the conclusion that any *illegal* sexual conduct occurred in the video booths of Danny's or the Book Bin East, section 1 of the Act, 68 P.S. § 467 cannot be used to declare these booths common nuisances and the injunction, to be valid, must rest on other grounds.

The majority also assumes that use of video booths poses a public health threat because of the risk of transmission of AIDS. Although I agree that conduct which poses a threat of immediate and irreparable harm to the public health may be enjoined under the common law doctrine of nuisance, *see Muehlieb v. City of Philadelphia*, 133 Pa.Commonwealth Ct. 133, 140, 574 A.2d 1208, 1211 (1990), the harm to the public health created by the conduct enjoined must be "practically certain, not merely probable." *Ranck*, 467 Pa. at 578, 359 A.2d at 752. Thus, in order to uphold an injunction based upon a public health threat, there must be some "apparently reasonable grounds" for determining that a substantial health threat actually exists. *Coward*, 489 Pa. at 340, 414 A.2d at 98. Such grounds do not exist in this instance.

The video booths in Danny's and the Book Bin East were used for sexual activity that consisted primarily of masturbation and oral intercourse. The evidence in the record establishes that these types of sexual activity pose little risk for transmission of AIDS. Expert witnesses for both the Attorney General and the book stores testified only that the trans-

mission of AIDS could *possibly* result from the sexual activity that occurs in the video booths. Furthermore, the testimony of a patron of the establishments (the patron), an HIV-infected man who had engaged in sexual activity in the video booths of both bookstores, is insufficient to establish the existence of a "practically certain" health threat. This is especially evident as the patron did not know when and where he had become infected. The patron further stated that he had never engaged in the type of sexual activity that poses a high risk for the transmission of HIV, that is, unprotected anal intercourse, in either of the bookstores. Thus, the evidence does not support "the trial court's conclusion that sexual conduct, occurring on the Appellants' premises, could lead to the spread of HIV which may result in AIDS" (majority op. at 122). The public health risk that results from the sexual activity occurring in the video booths is theoretical at best and does not meet the "immediate and irreparable harm" standard required to sustain a preliminary injunction.

The private sexual conduct of consenting adults may not be regulated on *moral* grounds, even if it consists of atypical sex practices that some may consider immoral. *Bonadio.* Although an activity which is not a nuisance *per se* may be enjoined as a public nuisance if it poses a risk of "immediate and irreparable harm" to the public health, here, the Attorney General seeks to restrain private sexual conduct among consenting adults without proving that that activity poses an "immediate and irreparable" risk of harm to others.

With regard to the California Couch Dancing activity, I do not believe that the evidence supports a finding of immediate and irreparable harm to the public. The majority also supports the preliminary injunction on the assumption that the Uses of Property Act also provides reasonable grounds for the injunction. As noted earlier, this section can be used to proscribe use of a building for illegal sexual activity. Had the trial court found that prostitution, an illegal sexual activity, occurred, I would have agreed that a clear right to relief exists which would provide reasonable grounds for the injunction.

Here, however, the trial court made no such finding.[1] Therefore I would remand for a determination of whether prostitution occurred as part of the California Couch Dancing operation.

Accordingly, I would vacate the injunction against the use of the video viewing booths in Danny's and the Book Bin East and would remand for a finding as to whether that portion of the Book Bin East housing the California Couch Dancing operation was used for purposes of prostitution.

---

1. California Couch Dancing ostensibly consisted only of live strip-tease acts. However, Dennis Guzy, an agent of the Attorney General, testified that he visited the third floor of Book Bin East on two separate occasions, and the "dancers" who performed for him offered to masturbate him or have sexual intercourse with him in exchange for money. An attendant on the second floor of the store even accepted Mr. Guzy's credit card for the sexual services of one of the "dancers." Offering to engage in sexual acts for a price and preparing to engage in those acts are the requisite elements of prostitution. *Commonwealth v. Danko*, 281 Pa.Superior Ct. 97, 108, 421 A.2d 1165, 1168 (1980).