## Doe v. Curran

C.P. of Lackawanna County, no. 97-CV-3636.

*James E. Colleran* and *James I. Devine,* for plaintiffs.

*John R. Lenahan Jr.* and *George E. Mehalchick,* for defendant Curran.

NEALON, *J.,* May 4, 2000—Defendant, Bernard J. Curran Ed.D., has filed preliminary objections challenging the legal sufficiency of the plaintiffs' claim for punitive damages and seeking to strike as scandalous the allegation that plaintiff, Jane Doe, was unaware of Dr. Curran's alleged practice of initiating sexual relations with his psychology patients. The averments that Dr. Curran lured Ms. Doe into sexual activity with him and thereafter destroyed her records in an effort to conceal his conduct are sufficient to justify the potential recovery of punitive damages. Since Ms. Doe's ignorance of Dr. Curran's sexual habits is relevant to rebut the contention that the parties' relationship was consensual, it is material to an issue in this case and will not be stricken.

## I. FACTUAL BACKGROUND

According to the averments of the complaint that was filed on July 30, 1999, Jane Doe and her 14-year-old daughter began receiving psychological treatment from Dr. Curran in December 1996. Ms. Doe maintains that she "did not know and could not have known before she started treatment with him that Bernard J. Curran Ed.D. had a history of improperly engaging in sexual contact with patients who had sought his professional services." (See plaintiffs' complaint, ¶¶3-5.) Following that initial consultation, Dr. Curran reportedly initiated sexual contact with Ms. Doe on two separate occasions "and forced and coerced [her] into inappropriate sexual behavior in violation of his professional duties and obligations to his patient, consistent with his predatory covert nature

and techniques of taking improper advantage of individuals who seek his professional services." (*Id.*, ¶7.)

The Does charge Dr. Curran with "negligence, carelessness, gross negligence, recklessness, outrageousness and intentional misconduct" for allegedly: (a) employing psychological techniques to lure Ms. Doe into sexual activity; (b) raping Ms. Doe and committing assault and battery; (c) failing to disclose his sexual predilections to Ms. Doe before she became a patient; and (d) intentionally and negligently inflicting emotional distress. (*Id.*, ¶8.) Ms. Doe seeks to recover compensatory and punitive damages from Dr. Curran based upon his foregoing conduct, as well as his destruction of treatment records which "would prove that [Ms. Doe] was his patient and that would tend to implicate him." (*Id.*, ¶10.) Additionally, Mr. Doe asserts a derivative claim for the loss of his wife's society and consortium. (*Id.*, ¶12.)

In his preliminary objections, Dr. Curran seeks to strike the averment in paragraph 5 of the complaint that Ms. Doe was unaware of his habit of instigating sexual contact with patients. Dr. Curran argues that such an allegation should be stricken pursuant to Pa.R.C.P. 1028(a)(2) since "[Ms. Doe's] knowledge of [Dr. Curran's] alleged history of engaging in sexual contact with patients has no relevance in proving a claim of negligence against him." (See defendant's brief, p. 3.) The Does counter that Ms. Doe's ignorance of Dr. Curran's proclivities is germane to rebut his anticipated defense that Ms. Doe consented to their sexual contact.

Dr. Curran further demurs to the Does' request for punitive damages on the grounds that the facts alleged "are clearly insufficient to support a claim for punitive damages" and that the purported destruction of Ms. Doe's

records "can only be characterized as an error of judgment." (*Id.,* pp. 4-5.) The Does posit that Dr. Curran's actions do constitute outrageous, wanton, willful or reckless conduct warranting the recovery of punitive damages. The parties filed their supporting memoranda of law on October 25, 1999 and October 28, 1999, and following the completion of oral argument on April 27, 2000, this matter was submitted for a decision.

## II. DISCUSSION

### (A) *Standard of Review*

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. *White v. PennDOT,* 738 A.2d 27, 31 (Pa. Commw. 1999). When considering preliminary objections, all material facts set forth in the challenged pleading are admitted as true, as well as all inferences reasonably deducible therefrom. *DeMary v. Latrobe Printing Co.,* 2000 WL 10232, ¶5 (Pa. Super. 2000); *Main Line Health Inc. v. CAT Fund,* 738 A.2d 66, 69 n.13 (Pa. Commw. 1999). Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. *Pacuariu v. Commonwealth,* 744 A.2d 389, 391 n.1 (Pa. Commw. 2000); *White,* 738 A.2d at 31. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections. *Edwards v. Germantown Hospital,* 736 A.2d 612, 614 (Pa. Super. 1999); *Giordano v. Ridge,* 737 A.2d 350, 352 (Pa. Commw. 1999).

## (B) *Psychologist Liability*

Not unlike other health care providers, psychiatrists and psychologists are subject to liability for malpractice or professional negligence. See *e.g., A. McD. v. Rosen,* 423 Pa. Super. 304, 621 A.2d 128 (1993); *McKenna v. Mooney,* 388 Pa. Super. 298, 565 A.2d 495 (1989). Pennsylvania courts have had occasion to review the disposition of administrative actions filed against mental health professionals who participate in sexual relations with their patients. See *Starr v. State Board of Medicine,* 720 A.2d 183 (Pa. Commw. 1998) (affirming revocation of psychiatrist's license to practice for violating 63 P.S. §422.41(8) by engaging in sexual relations with patients); *Morris v. State Board of Psychology,* 697 A.2d 1034 (Pa. Commw. 1997) (upholding revocation of psychologist's license to practice for violating section 8(a) of the Professional Psychologists Practice Act, 63 P.S. §1208(a), and the Code of Ethics, 49 Pa. Code §41.61, by participating in sexual intimacies with clients); *Giddings v. State Board of Psychology,* 669 A.2d 431 (Pa. Commw. 1995) (affirming suspension of psychologist's license for violating principle 6, section (b) of the Code of Ethics by having a sexual relationship with his patient). Regrettably, there is no reported Pennsylvania case law discussing the elements of a civil cause of action against a psychologist who induces a patient to engage in sexual activity with him. But see *Physicians Insurance Co. v. Pistone,* 555 Pa. 616, 726 A.2d 339 (1999) (physician who exposed himself to a patient as he masturbated and fondled her breasts was not entitled to coverage by his professional liability insurer since his acts were not "professional health care services").

Other jurisdictions have employed varying approaches in addressing claims for damages against psychiatrists or psychologists who participate in sexual relations with patients. Although some states have created a cause of action by statute, see *e.g., Patricia C. v. Mark D.,* 12 Cal. App. 4th 1211, 1214, 1220-21, 16 Cal. Rptr. 2d 71, 72, 76 (1993), others have recognized a common-law claim for sexual battery or negligence. See *Noto v. St. Vincent's Hospital,* 142 Misc.2d 292, 295-96, 537 N.Y.S.2d 446, 448-49 (1988) (patient who was coerced into sexual activity by her psychiatrist may recover for medical malpractice and intentional infliction of emotional distress, but not for lack of informed consent in the absence of any contention that the sexual relationship was part of the proposed psychiatric treatment). The Supreme Court of Nevada has concluded that a patient advancing a claim of "sexual advantage" against her physician who allegedly enticed her into a sexual relationship must demonstrate that (1) the physician held a superior authoritative position in the professional relationship, (2) the patient was vulnerable as a result of her illness, (3) the physician exploited that vulnerability, and (4) the exploitation was the proximate cause of any claimed harm. *Hoopes v. Hammargren,* 102 Nev. 425, 432, 725 P.2d 238, 243 (1986). If the sexual relationship is consensual, the patient may also be required to support her claim with expert testimony. See *Sunsinger v. Perez,* 2000 WL 365972, *3 (Tex. App.-Beaumont April 6, 2000) ("summary judgment is warranted based upon [the patient's] failure to present expert testimony in order to show that Dr. Perez's conduct, including his having sexual relations with her, was outside the applicable standard of care").

In her complaint, Ms. Doe asserts a cause of action for medical battery and rape predicated upon Dr. Curran's unauthorized and offensive contact with her body. See *Montgomery v. Bazaz-Sehgal,* 742 A.2d 1125, 1130-31 (Pa. Super. 1999) (in a medical battery case, there need be no physical injury, but only some unpermitted touching). In addition, Ms. Doe seeks to recover damages for intentional infliction of emotional distress on the basis that Dr. Curran's "behavior is so extreme as to go beyond all bounds of decency." *Denton v. Silver Stream Nursing & Rehabilitation Center,* 739 A.2d 571, 577 (Pa. Super. 1999); *Gebert v. Granahan,* 101 Lacka. Jur. 75, 85-87 (1999). Ms. Doe likewise advances a claim for negligent infliction of emotional distress which apparently resulted from Dr. Curran's unintentional conduct that deviated from the appropriate standard of care. See *Doe v. Philadelphia Community Health Alternatives AIDS Task Force,* 745 A.2d 25, 28 (Pa. Super. 2000) (a plaintiff who alleges negligent infliction of emotional distress must suffer immediate and substantial physical harm); *Yanchick v. Tyler Memorial Hospital,* no. 98-CV-5256, Nealon, J., at pp. 7-11 (Lacka. Cty. February 28, 2000).

### (C) *Dr. Curran's History of Sexual Misconduct*

In anticipation of Dr. Curran's defense that the sexual relations were consensual, Ms. Doe has averred that she was unaware of Dr. Curran's alleged pattern of sexually assaulting his patients. Dr. Curran seeks to strike any allegations concerning his supposed practice of stimulating sexual contact with patients as violative of Pa. R.C.P. 1028(a)(2) which precludes the inclusion of any "scandalous or impertinent matter" in a pleading. To be

considered scandalous or impertinent, the allegations "must be immaterial and inappropriate to the proof of the cause of action." *Common Cause/Pennsylvania v. Commonwealth,* 710 A.2d 108, 115 (Pa. Commw. 1998).

If Ms. Doe had sought Dr. Curran's services at a time when she knew or suspected that he had a proclivity to engage in sexual contact with patients, she arguably may have consented to such a relationship or assumed the risk that such conduct would occur. *Montgomery,* 742 A.2d at 1130 (in a medical battery case, consent to being touched is a defense). Accord *In re Hasay,* 666 A.2d 795, 799 (Pa.Ct.Jud.Disc. 1995) (intimate sexual activities between a district justice and an adult female were consensual and did not warrant judicial discipline), *aff'd in part, rev'd in part on other grounds,* 546 Pa. 481, 686 A.2d 809 (1996); *Commonwealth ex rel. Preate v. Danny's New Adam & Eve Bookstore,* 155 Pa. Commw. 281, 292-93, 625 A.2d 119, 125 (1993) (private sexual conduct by consenting adults is not prohibited by Pennsylvania law even if it consists of atypical sex practices that some may consider immoral). Ms. Doe's contention that she was ignorant of Dr. Curran's alleged history when she first entered into a professional relationship with him is relevant to an element of her proof, *i.e.,* that their sexual contact was non-consensual.

Independent of the relevance of Ms. Doe's knowledge or lack thereof, evidence of Dr. Curran's sexual history vis-à-vis his patients may also be admissible to demonstrate his habit or routine practice of sexually assaulting patients. Evidence that a person has performed a certain act on a given date is generally not probative of a contention that [s]he has committed a similar act at another time. *General Equipment Manufacturers v. Westfield In-*

*surance Co.,* 430 Pa. Super. 526, 549, 635 A.2d 173, 185 (1993), *app. denied,* 537 Pa. 663, 644 A.2d 1200 (1994); *Gurevitz v. Piczon,* 42 D.&C.4th 308, 323 (Lacka. Cty. 1999). However, a person's habit or custom "is admissible to show what occurred in a specific instance depend[ing] on the 'invariable regularity' of the usage or habit" which "make it probable that it would be carried out in every instance or in most instances." *Baldridge v. Matthews,* 378 Pa. 566, 570, 106 A.2d 809, 811 (1954); *Liles v. Balmer,* 389 Pa. Super. 451, 456, 567 A.2d 691, 693 (1989). The common-law concept of habit and routine practice denoting conduct that occurs with fixed regularity in repeated specific instances has been codified in Pa.R.E. 406 which provides that "[e]vidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

Where the person's knowledge or intent is a material fact to be proved, the commission of a similar act at a different time is particularly relevant. *General Equipment Manufacturers, supra* at 549-50, 635 A.2d at 185; *Baumeister v. Baugh & Sons Co.,* 142 Pa. Super. 346, 353, 16 A.2d 424, 427 (1940). Instantly, the Does seek to recover punitive damages from Dr. Curran, and for the reasons articulated in section (D) below, Dr. Curran's intent or state of mind is material to any claim for punitive damages. Thus, Dr. Curran's alleged pattern of sexual misconduct is not only germane to the consent issue in this case, but is also relevant to the request for punitive damages. Accordingly, Dr. Curran's request to strike

paragraph 5 of the complaint as scandalous or impertinent will be denied.[1]

### (D) *Punitive Damages*

Dr. Curran further demurs to the Does' request for punitive damages. In particular, Dr. Curran maintains that the contention that he destroyed Ms. Doe's treatment records is insufficient to support a punitive damages claim. Alternatively, Dr. Curran requests that the Does be required to file a more specific pleading since he "does not know exactly what allegations are being made against him" by Ms. Doe and "is not able to properly file a responsive pleading or prepare a defense for trial." (See defendant's brief, p. 5.)

Unlike compensatory damages, punitive damages are penal in nature and are designed to deter and punish egregious behavior. *G.J.D. by G.J.D. v. Johnson,* 552 Pa. 169, 172, 713 A.2d 1127, 1129 (1998); *Taylor v. Albert Einstein Medical Center,* 723 A.2d 1027, 1037 (Pa. Super. 1998). Punitive damages may be awarded if the actor's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others. *Althaus by Althaus v. Cohen,* 710 A.2d 1147, 1159 (Pa. Super. 1998), *appeal granted,* 556 Pa. 701, 729 A.2d 1124 (1998); *Shumek v. Scranton Counseling Center,* 100 Lacka. Jur. 173, 179 (1999). Because a medical battery

---

1. The Commonwealth has filed criminal charges against Dr. Curran based upon his alleged sexual conduct towards Ms. Doe. In that criminal proceeding, Judge Carmen D. Minora ruled that testimony would be admissible from three other patients of Dr. Curran who engaged in sexual contact with him under substantially similar circumstances. See *Commonwealth v. Curran,* 97-CR-1850, Minora, J., at pp. 10-11 (Lacka. Cty. January 19, 1999).

"connotes an intentional invasion of another's rights, punitive damages may be assessed in an appropriate case." *Montgomery,* 742 A.2d at 1132.

Based upon the allegations of the complaint, a jury could conclude that Dr. Curran's sexual behavior alone was outrageous, wanton or recklessly indifferent. As to the purported expungement of Ms. Doe's records, Pennsylvania courts have been reluctant to recognize an independent cause of action for a party's negligent spoliation of evidence in an existing or anticipated civil case. See *e.g., Elias v. Lancaster General Hospital,* 710 A.2d 65 (Pa. Super. 1998); *Kelly v. St. Mary Hospital,* 694 A.2d 355 (Pa. Super. 1997). Notwithstanding that fact, the Does may, at a minimum, be entitled to remedial sanctions against Dr. Curran in the form of an adverse inference instruction to the jury or the entry of summary judgment as to a specific issue. *Schroeder v. PennDOT,* 551 Pa. 243, 250-52, 710 A.2d 23, 27 (1998); *Tenaglia v. Procter & Gamble Inc.,* 737 A.2d 306, 308 (Pa. Super. 1999).

The Does argue that Dr. Curran discarded his treatment records to facilitate his fraudulent denial of a psychologist-patient relationship with Ms. Doe and to conceal his inculpatory conduct. If the Does can establish that Dr. Curran intentionally eradicated his records for that purpose, he may be precluded from denying the existence of a psychologist-patient relationship or the jury may be instructed that it may draw such an inference from the extermination of the records. Dr. Curran's spoliation of potentially incriminating evidence may also demonstrate actual knowledge of his unethical acts and, therefore, may be indicative of a continuing pattern of egregious and reprehensible conduct that may justify the recovery of punitive damages.

Finally, Dr. Curran alternatively requests that the Does be compelled to file a more specific pleading. A complaint must apprise the defendant of the claims being asserted and provide a synopsis of the essential facts supporting those claims. *Miketic v. Baron,* 450 Pa. Super. 91, 104, 675 A.2d 324, 330-31 (1996). The factual averments of a complaint must be sufficiently specific to enable the defendant to prepare a defense and responsive pleading. *Baker v. Rangos,* 229 Pa. Super. 333, 350, 324 A.2d 498, 505-506 (1974).

Examining the Does' complaint in its entirety, the factual allegations concerning the basis for the punitive damages claim are sufficiently specific. It is disingenuous for Dr. Curran to claim in his preliminary objections that he "does not know exactly what allegations are being made against him" by the Does. Ms. Doe's allegations have been extensively described in the criminal charges filed against Dr. Curran and were summarized by Judge Minora more than 15 months ago as follows:

"[Ms. Doe] maintains that these incidents occurred while she was a patient of [Dr. Curran] and while she was attending counseling sessions with him. [Ms. Doe] stated that at her initial visit to [Dr. Curran's] office, there was no sexual contact. However, [Ms. Doe] alleges that on her second appointment with [Dr. Curran], she was alone with him when [Dr. Curran] exposed his penis and began masturbating in front of her. During this counseling session, [Ms. Doe] alleges that [Dr. Curran] then took her hand, placed it on his penis and caused [Ms. Doe] to masturbate him. Subsequently, [Ms. Doe] contends that [Dr. Curran] caused [Ms. Doe] to perform oral sex on him without her consent.

"On [Ms. Doe's] third visit to [Dr. Curran's] office, [Ms. Doe] stated that her intention was to confront [Dr.

Curran] over what had previously occurred. When [Ms. Doe] arrived at [Dr. Curran's] office again there were no other persons present. At this visit, [Dr. Curran] picked [Ms. Doe] up and forcibly carried her into another room where there was a reclining chair, placed her on the chair and pulled her pants down below her knees. [Ms. Doe] told [Dr. Curran] not to do that and she began kicking. [Dr. Curran] then exposed his penis, got on top of [Ms. Doe] and, without [Ms. Doe's] consent, placed his penis inside [Ms. Doe's] vagina. [Dr. Curran] asked [Ms. Doe] if she was taking birth control pills and then ejaculated inside her. After ejaculation, [Dr. Curran] went into the bathroom and [Ms. Doe] got dressed and left the building." *Commonwealth v. Curran, supra* at pp. 2-3.

Consequently, Dr. Curran is well aware of the accusations being made against him by Ms. Doe and clearly possesses enough information to file a responsive pleading and prepare a defense. An appropriate order will follow.

## ORDER

And now, May 4, 2000, upon consideration of the preliminary objections of defendant, Bernard J. Curran Ed.D., the memoranda of law submitted by the parties, and the oral argument of counsel, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) The preliminary objections of defendant, Bernard J. Curran Ed.D., are denied; and

(2) The defendants are directed to file a responsive pleading to the complaint within 20 days of the date of this order.